**Ronald STRAIGHT,**
**Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT,**
**Respondent-Appellee.**

No. 84–3447.

United States Court of Appeals,
Eleventh Circuit.

Sept. 13, 1985.

Rehearing and Rehearing En Banc
Denied Oct. 25, 1985.

John L. Briggs, Jacksonville, Fla. (Court Appointed), for petitioner-appellant.

Carolyn M. Snurkowski, Asst. Atty. Gen., Miami, Fla., for respondent-appellee.

Before VANCE, HENDERSON and CLARK, Circuit Judges.

HENDERSON, Circuit Judge:

Ronald Straight was tried and convicted in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida for the murder of James Stone and was sentenced to death. He later sought post-conviction relief which was denied by the state courts. He then commenced this habeas corpus action in the United States District Court for the Middle District of Florida. He appeals the denial of that petition by the district court. Finding no reversible error, we affirm the judgment of the district court.

On July 30, 1976, Straight received a mandatory conditional parole from the Florida Parole and Probation Commission. By early September, he had drifted to Jacksonville, where he moved into an apartment occupied by Timothy Palmes, Jane Albert and Albert's seven-year old daughter. Jane Albert worked as a secretary for James Stone, who owned a furniture store. After discussing Stone's business with Albert, Straight and Palmes proposed that

they would collect old debts of Stone's customers in exchange for forty percent of the monies collected. Stone rejected their offer because they contemplated using violence against the uncooperative debtors. But Stone did offer Straight one hundred dollars for new clothes, and told Palmes there might soon be a full-time job opening in the store.

By late September, Stone had decided not to employ Palmes, who then told Straight and another, "You know, I'm going to kill him." Straight replied that he should have that opportunity because Stone's offer of money was insulting. They agreed to wait until after the first of October, when customers' monthly payments would be in the store. On Sunday, October 3, 1976, Straight, Palmes and Albert purchased lumber, cement, metal supports and screws to construct a heavily weighted coffin. The next morning, Albert lured Stone from the store to her apartment, where her daughter told him to go to the back bedroom. Straight and Palmes were waiting for him and there struck him with a hammer, bound his hands and feet with wire and placed him in the box. For approximately thirty minutes, they beat him, amputated several of his fingers and otherwise tortured him. During this time the victim repeatedly begged for his life. Finally, with a machete and butcher knife, Straight and Palmes stabbed Stone eighteen times, eventually killing him. They took his watch, money and car. Meanwhile, Albert took $2,800.00 from the store. The weighted coffin with Stone's corpse was dumped in the St. Johns River. Albert, her daughter, Palmes and Straight then left for California. When police there apprehended them, Straight resisted arrest by firing a weapon at the officers.

Albert was granted immunity from prosecution by the state in exchange for her testimony as a witness. Palmes confessed and the coffin was recovered from the river. Tried separately, Palmes and Straight were convicted of first degree murder and sentenced to death.

In his petition to the district court, Straight asserted numerous grounds for relief but concedes that many of these arguments were investigated and abandoned during collateral state proceedings. Before us he alleges that (1) the trial judge misled the jurors into believing they could not consider alleged mitigating factors not specified in Florida's capital sentencing statute, Fla.Stat.Ann. § 921.141(6), (2) the trial court improperly applied the statutory list of aggravating and mitigating circumstances to the evidence, (3) his counsel was ineffective at trial and on appeal and (4) the Florida Supreme Court violated his due process rights by soliciting ex parte nonrecord material while reviewing his appeal. We consider each of these alleged errors in turn.

*The Mitigating Circumstances Instruction*

■ During the penalty phase of Straight's trial, the trial judge instructed the jury, "The aggravating circumstances which you may consider are limited to such of the following as may be established by the evidence." State Record Vol. 14, pp. 29–30. The judge then read the statutory aggravating circumstances. She next instructed the jury, "The mitigating circumstances which you may consider, if established by the evidence, are these...." *Id.* p. 32. The statutory mitigating circumstances were read. Straight contends that the latter instruction failed to adequately inform the jurors that they could also consider non-statutory factors in mitigation. He suggests that his prior history of drug abuse and psychotherapy and his less extensive participation in the murder were two non-statutory mitigating circumstances that could have been considered by the jury. The district court found that Straight had failed to object in the trial court or on direct appeal as required by Florida law, thereby precluding a review in the federal courts. We agree with the district court.

■ Under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) and its progeny, noncompliance with

a state procedural rule generally precludes federal habeas corpus review of all claims as to which, under state law, such failure is an adequate ground for denying review. If a petitioner demonstrates both cause for his noncompliance and actual prejudice resulting therefrom, however, a federal court can review these claims. *United States v. Frady,* 456 U.S. 152, 167, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816, 830 (1982). Straight does not deny that Florida's contemporaneous objection rule is consistently applied by the courts of the state. *Francois v. Wainwright,* 741 F.2d 1275, 1286 (11th Cir.1984), or that Florida's rule against collateral review of issues not raised on direct appeal likewise constitutes an adequate procedural bar. *Palmes v. Wainwright,* 725 F.2d 1511, 1525 (11th Cir.1984).

Straight's only reason for not proposing additional mitigation instructions at the trial or raising the issue on direct appeal is that he had ineffective assistance of counsel during those proceedings. A showing that counsel was ineffective in failing to assert a claim in compliance with state procedural rules may satisfy the cause prong of *Sykes. Birt v. Montgomery,* 725 F.2d 587, 597 (11th Cir.1984) (en banc). Here, however, the unrebutted testimony of his trial counsel, Randolph Fallin, at a collateral state court hearing reveals that the omission was deliberate and resulted from a sound strategic decision. Straight's defense to the charge of murder has always been, and continues to be, that he was elsewhere at the time of the murder and had no prior knowledge of it. After investigating other possible avenues of defense, Fallin based his strategy on Straight's categorical denial of any participation in the crime. To have maintained also that Straight did participate, but only to a lesser degree than Albert and Palmes or with a diminished mental capacity, would have undermined his overall defense. Fallin considered the situation and decided that such inconsistency would be more harmful than advantageous to the defense. We readily conclude that such a strategic decision was not below the objective standard of reasonableness. *Strickland v.*

*Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This is comparable to the situation in *Foster v. Strickland,* 707 F.2d 1339, 1343 (11th Cir.1983), where a decision not to pursue an insanity defense was reasonable because the defendant insisted on a contradictory position, that he had been physically incapacitated by an epileptic fit while his companions murdered the victim. Given the reasonableness of Fallin's decision, it was also reasonable not to seek instructions concerning non-statutory mitigating factors which he had decided not to argue to the jury. Because Straight has failed to demonstrate cause for not complying with Florida's procedural rules, he cannot now obtain federal review of his claim.

*Findings as to Aggravating and Mitigating Circumstances*

Following the jury's advisory sentence of death, the trial court reviewed the evidence and a presentence investigative report. The court found four aggravating circumstances and no mitigating circumstances. Straight now challenges the trial court's application of the sentencing statute to the evidence.

He first faults the trial court for failing to consider evidence of (1) his "character and reputation for avoiding seriously violent behavior," (2) his mental health history, (3) his lesser participation in the murder and (4) his remorse over the cruel death of Stone. He does not contend that the trial court refused to hear this evidence. He simply notes that the court's order discussed only the factors listed in the statute, and from this he concludes that his evidence of non-statutory mitigating circumstances was never considered by the court.

This circuit has rejected an identical challenge brought by Straight's coconspirator, Timothy Palmes. In *Palmes v. Wainwright,* 725 F.2d 1511 (11th Cir.1984), the panel stated:

> [We] cannot conclude that because the order discusses only the statutorily mandated factors ... the other evidence in mitigation was not considered.... Our

review is completed once it is established that a full hearing was conducted in which appellant's counsel was given an opportunity to present all of the mitigation evidence.

*Id.* at 1523. There is no indication that the trial judge did not consider all the evidence offered by Straight. Consequently, this contention is without merit, and this challenge therefore fails.

■ Straight further complains that the trial judge considered non-statutory aggravating circumstances, in violation of Florida law. *E.g., Miller v. State*, 373 So.2d 882, 885 (Fla.1979). He claims that in weighing the sentence, the state trial judge relied on his armed resistance when arrested and on the parole officer's opinion that he was a danger to society. A reading of the sentencing order discloses that the trial judge meticulously evaluated the evidence in accordance with the Florida statute, and that the above facts were considered only to the extent that they negated possible mitigating circumstances. There is no indication at all that the judge regarded Straight's resistance or the parole officer's assessment as aggravating factors. In the absence of clear proof to the contrary, this court presumes that the trial judge followed the statute and her own instructions to the jury. *Adams v. Wainwright*, 709 F.2d 1443, 1447 (11th Cir.1983). Because the premise of Straight's argument is false, we need not decide the federal constitutional implications of such a state law error. *Cf. Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983).

Finally, Straight points out that the trial court relied on the same facts to find two aggravating circumstances, in violation of well-established Florida law. *E.g., Provence v. State*, 337 So.2d 783 (Fla.1976). The court improperly found from the death of Stone followed by the taking of his wallet both that the murder was committed in the course of a robbery, Fla.Stat.Ann. § 921.141(5)(d), and that the murder was committed for pecuniary gain, § 921.-141(5)(f). The Florida Supreme Court held that such "doubling" was error, *Straight v.*

*State*, 397 So.2d 903 (Fla.1981), but found it harmless in this case because by eliminating one aggravating circumstance there still remained three aggravating factors and no mitigating circumstances. The Florida Supreme Court explained:

Where it is clear that the sentencing judge merely recited both statutory factors without giving improper double consideration to the single aspect in question, or where the absence of mitigating circumstances makes clear that any added weight accorded the factor did not tip the balance in favor of a sentence of death rather than life, the error of double recitation is harmless.

*Id.* at 910.

Six justices of the United States Supreme Court have approved Florida's application of a harmless error test to a case in which the sentencing judge partly relied on a non-statutory aggravating circumstance. *Barclay v. Florida, supra.* In *Barclay*, the trial court deviated from state law by considering the defendant's criminal record an aggravating circumstance, along with four statutory aggravating factors. The *Barclay* plurality held that this state law error did not violate the federal constitution because the error was harmless, the Florida Supreme Court having concluded that under state law the same sentence would have been invoked even without consideration of Barclay's past crimes. So long as the state's highest court had not applied its harmless error analysis in an automatic fashion, Justice Rehnquist concluded, federal inquiry into the issue was at an end. 463 U.S. at 958, 103 S.Ct. at 3428, 77 L.Ed.2d at 1149. *Accord*, 463 U.S. at 972–74, 103 S.Ct. at 3436–37, 77 L.Ed.2d at 1158–59 (Stevens and Powell, JJ., concurring).

■ Here the Florida Supreme Court determined that Straight would have been sentenced to death even if both the robbery and pecuniary gain aggravating factors were excluded from consideration. This conclusion did not result from a mechanical approach but rather from a careful reweighing of all the evidence. Under these

circumstances, we cannot say that Straight's sentence was imposed in any unconstitutional manner. *Barclay.*

### Ineffective Assistance of Counsel

Straight first claims that his lawyer, Fallin, failed to ask any questions of eight veniremen who had stated, in response to questioning by the prosecution, either that they could not return a death penalty in any case or that they could not evaluate the evidence fairly, knowing that the defendant was charged with a capital crime. He reasons that if Fallin had tried to "rehabilitate" these veniremen, the prosecution might not have been able to excuse them for cause under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). In turn, the state would have had to expend some of its "expensive" peremptory challenges. Straight does not challenge the court's *Witherspoon* rulings based on the answers adduced by the prosecutor.

■ To demonstrate ineffectiveness, Straight must show both that his attorney failed to render reasonably effective assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington, supra.* The only reason to follow such a strategy would be to so confuse the prospective jurors that they might somehow equivocate their answers, thereby avoiding excusal. There is absolutely no evidence to imply that such an attempt would have been successful. We cannot assume that the jurors would have changed their positions. Under such circumstances, counsel cannot be constitutionally faulted for failing to pursue a more vigorous examination of the jurors.

■ Straight also criticizes Fallin for not objecting to certain questions propounded by the prosecution during voir dire. The state asked each venireman whether he or she would be so offended by the grant of immunity to a participant in the murder that he or she could not fairly consider the witness' evidence. Twice the prosecution put its question thus:

> You understand that ... I would like to call, of course, as Mr. Fallin would, the most prominent business people in the community, the ministers, priests, clergymen, well-thought-of individuals, but these people just aren't usually the witnesses to murder. Also, many times the State has to make—the State, that is myself, has to make a decision as to who's the least bad person in a given situation. We use him in order to prosecute the worst. What all this boils down to is this: would each of you be able to listen to the evidence given by each witness and give to it the same common sense, sound judgment and reason that you would use in everyday life?

State Record Vol. 5 pp. 139–40, 149–50.

Straight urges that his counsel should have objected on the ground that by this question the prosecution was indirectly denominating him as "the worst" participant in the murder. Even assuming the validity of such an objection, we find that no prejudice resulted from Fallin's decision not to object. The state's assessment of Straight's culpability as opposed to Albert was implicit in its grant of immunity to her and its prosecution of him. During its closing argument, the prosecution stressed Straight's and Albert's relative guilt, and Straight does not challenge the propriety of such argument. Nor does he allege that Fallin failed to subject Albert to rigorous cross-examination. The result of the trial would have been no different had Fallin interposed an objection.

Straight next alleges that his attorney was ineffective in failing to object to a question asked during Straight's cross-examination by the state. Straight took the stand to testify that he was not present in the apartment at the time of the murder. To demonstrate his client's truthfulness and to preempt an attack by the prosecution on Straight's credibility, Fallin elicited from Straight testimony of his extensive drug abuse and prior narcotics conviction, his acquaintance with Palmes while in pris-

on at Starke for another felony, his recent parole, his subsequent efforts to coordinate a cocaine distribution ring, his attempted armed robbery of a man in California and his firing at the California police who arrested him. Straight and Fallin hoped his admission of all of these past sins would convince the jury that his unsupported alibi was also true. On cross-examination, the prosecutor asked Straight why he had opened fire on the police. In one of several contradictory replies, Straight answered that he had not recognized the officers as police. The prosecutor then asked how many times Straight had been convicted of crimes, to which Straight replied six. He charges his lawyer with ineffectiveness for not objecting to this question.

Fallin's uncontradicted testimony at the state court collateral hearing indicates that he refrained from objecting because it was an integral part of the alibi defense to be truthful and open about Straight's criminal record. To have abandoned that tactic by objecting would have undercut the defense, and to little purpose, given that the jury already knew of Straight's extensive criminal history. This was a reasonable tactical decision that did not render the trial fundamentally unfair. *E.g., Solomon v. Kemp,* 735 F.2d 395, 402 (11th Cir.1984) (decision not to challenge at trial the admissibility of defendant's confession).

Straight also alleges that his counsel failed to investigate possible non-statutory mitigating circumstances because of the Florida Supreme Court's ruling in *Cooper v. Florida,* 336 So.2d 1133 (Fla.1976), *cert. denied,* 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977). Straight does not proffer any substantial evidence that Fallin interpreted *Cooper* as a bar to such proof, not even an affidavit by Fallin. As pointed out earlier, Straight suggests only two possible mitigating factors. We have already noted that Fallin's decision not to argue these to the jury was reasonable. In any case, Fallin's testimony at the state § 3.850 hearing shows he investigated these possible mitigating circumstances. State Hearing Record Vol. 1 pp. 45–49.

Several of Straight's additional ineffectiveness claims are mere restatements of his arguments concerning jury instructions and the trial court's factfinding process. These are likewise without merit. Finally, Straight alleges ineffective representation because of Fallin's failure to raise certain issues on direct appeal. However, we have already found that these issues need not have been raised at trial, and the allegations are therefore without legal basis.

*Non-record material*

Since *Ford v. Strickland,* 696 F.2d 804, 811 (11th Cir.1983) (en banc), *cert. denied,* —— U.S. ——, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983), it is clear that the Florida Supreme Court's alleged ex parte solicitation and receipt of non-record material did not violate Straight's due process rights.

The judgment of the district court denying Straight's petition for a writ of habeas corpus is AFFIRMED.