No. A–892 (85–6947).  STRAIGHT *v.* WAINWRIGHT, SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, ET AL.  C. A. 11th Cir.  The order heretofore entered staying the execution of the sentence of death until 5 p.m., May 20, 1986, is vacated. The application for stay of execution of sentence of death, presented to JUSTICE POWELL, and by him referred to the Court, is denied.  JUSTICE STEVENS would grant the application for stay of execution.

JUSTICE POWELL, joined by THE CHIEF JUSTICE, JUSTICE REHNQUIST, and JUSTICE O'CONNOR, concurring in the denial of a stay.

In view of the discussion in the dissents, I write to summarize my reasons for voting to deny a stay in this case.

Ronald Straight is here on his second federal habeas corpus petition.  In his first petition, Straight argued that he was handicapped by the reasonable belief of trial counsel and the trial judge that Florida law barred the introduction of nonstatutory mitigating evidence at capital sentencing proceedings.  Cf. *Lockett* v. *Ohio*, 438 U. S. 586 (1978).  The District Court denied relief on this claim, and on Straight's other claims as well, and the Court of Appeals for the Eleventh Circuit affirmed.  *Straight* v. *Wainwright*, 772 F. 2d 674 (1985).  Less than seven weeks ago, this Court denied Straight's petition for certiorari, a petition that again raised his *Lockett* argument.  475 U. S. 1099.

In his second habeas petition, filed late yesterday, Straight raises the same substantive legal claim, and adds various new

factual allegations in support. The District Court properly found that, to the extent Straight seeks to relitigate the same claims raised earlier, his petition should be dismissed under Habeas Corpus Rule 9(b) as a successive petition. The court also found that, to the extent that Straight sought to make new arguments that plainly could have been raised earlier, his petition was an abuse of the writ. See *Woodard* v. *Hutchins*, 464 U. S. 377, 378–380 (1984) (POWELL, J., joined by BURGER, C. J., and BLACK-MUN, REHNQUIST, and O'CONNOR, JJ., concurring). The Court of Appeals found no error in the District Court's disposition, and denied a certificate of probable cause to appeal. The Court of Appeals granted a stay of execution until noon today to permit this Court to consider Straight's belated application for a stay and petition for certiorari.[1]

I find no basis for concluding that the District Court abused its discretion. Applicant has not offered any reason why he should be permitted to relitigate his *Lockett* claim, nor has he justified his previous failure to allege the supporting factual grounds on which he now relies. Thus, the District Court's decision to deny relief based on Rule 9 was plainly correct. That being the case, there is no ground for reaching the merits argument that the dissenting opinions now rely on.[2]

---

[1] Acting in my capacity as Circuit Justice, I extended the stay of petitioner's execution until 5 p.m. today to allow fuller consideration of his stay application.

[2] JUSTICE BRENNAN contends that, because four Justices have voted to "hold" this case pending disposition of *Darden* v. *Wainwright*, No. 85–5319, the Court is obliged to stay applicant's execution in order that the case not be mooted. JUSTICE BRENNAN correctly notes that, in the past, the Court has ordinarily stayed executions when four Members have voted to *grant* certiorari, and he maintains that "[a] 'hold' is analogous to a decision to grant a petition for certiorari." *Post*, at 1135 (dissenting). In my view, this last assertion is incorrect on several levels. First and foremost, the Court often "holds" cases for reasons that have nothing to do with the merits of the cases being held, as when we wish not to "tip our hand" in advance of an opinion's announcement. Second, when certiorari is granted, *by definition* the Court's resolution of the issues presented in that case might affect the judgment rendered below. That is not necessarily true of held cases. The judgment in a held case may rest on a number of grounds sufficient to sustain it. In this case, my vote to deny Straight's petition for certiorari—and therefore not to hold the petition for *Darden, supra*—reflects my view that *no matter how Darden* is resolved, the judgment of the District Court will be unaffected. The reason for that conclusion is obvious: the District Court found that the pe-

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, and with whom JUSTICE BLACKMUN joins in all but the first paragraph, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting), I would grant the stay application and the petition for certiorari and would vacate the sentence in this case.

But even if I did not hold this view, I would extend the stay of execution in this case until the Court acts on Straight's petition for certiorari in No. 85–6947. In that petition, Straight contends that the State of Florida's death penalty statute and the cases interpreting it prior to his trial resulted in the failure of the trial court to consider nonstatutory mitigating factors in violation of this Court's holding in *Lockett* v. *Ohio*, 438 U. S. 586 (1978). This issue is similar to one presented in *Darden* v. *Wainwright*, No. 85–5319, a case that has been argued but not yet decided by the Court, and other petitions that are before the Court that have not yet been acted upon.

It would be disturbing enough if the Court were to allow this execution to proceed without acting on the merits of Straight's petition for certiorari, since this would allow him to be executed despite the continuing possibility of relief from this Court. What the Court does here is far more alarming, however. For the fact is that in my view the Court *has* acted on the merits of Straight's petition. Four Justices have voted to "hold" Straight's petition because they believe that it presents an issue sufficiently similar to *Darden* to warrant delaying disposition of Straight's case until a decision is reached in that case. To deny a stay of execution in the face of this "hold" is, in my view, a wrong to which I may not be a silent witness.

A minority of the Justices has the power to grant a petition for certiorari over the objection of five Justices. The reason for this "antimajoritarianism" is evident: in the context of a preliminary 5-to-4 vote to deny, 5 give the 4 an opportunity to change at least one mind. Accordingly, when four vote to grant certiorari in a

---

tition must be dismissed under Habeas Corpus Rule 9, and therefore did not reach the merits of applicant's claim. *Darden,* of course, does not raise any issue concerning the applicability of Rule 9 in cases such as this one.

capital case, but there is not a fifth vote to stay the scheduled execution, one of the five Justices who does not believe the case worthy of granting certiorari will nonetheless vote to stay; this is so that the "Rule of Four" will not be rendered meaningless by an execution that occurs before the Court considers the case on the merits.

A "hold" is analogous to a decision to grant a petition for certiorari. The Court's "hold" policy represents the conviction that like cases must be treated alike. Like the "Rule of Four," it grants to a minority of the Court the power to prevent the majority from denying a petition for certiorari when the minority is persuaded that the issues or questions presented in the case to be held are similar to a case that the Court is to decide. The principle is apparent: whether an individual obtains relief should not turn on the fortuity of whether his papers were the first, the second, or the tenth to reach the Court. What counts is the merits. A vote to "hold" is a statement by a number of Justices that the disposition of the granted case may have an effect on the merits of the case which is to be held. The fact that a majority of the Justices disagree with the decision to "hold" does not warrant subversion of the "hold" rule any more than does disagreement by five with the decision to grant a petition for certiorari justify departure from the "Rule of Four." It is unthinkable to me that the practice that four votes to grant certiorari trigger an "automatic" fifth vote to stay an execution should not apply to a "hold" when a man's life is in the balance.

For the Court to deny a stay to a petitioner who is under sentence of death, and whose petition four Justices have determined to hold, is to give a new and gruesome meaning to the old notion of the "race to the courthouse." It is to distinguish as an initial matter between those who may live and those who will die by rewarding with a stay of execution that litigant whose lawyer files his papers first. It is to divide litigants arbitrarily into the condemned and the spared on the basis of what amounts to little more than a footrace. It is to reject those first principles of justice that ultimately define a system of law: the principles of uniform application of rules, of consistency, of evenhandedness, of fairness.

I dissent.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting from denial of application for stay of execution.

The State of Florida intends to execute applicant at 5:01 this afternoon. In the papers he has filed in this Court, applicant claims that the Florida death penalty statute and the cases interpreting it prior to his trial led all participants in his sentencing hearing, including the trial judge, to believe that nonstatutory mitigating circumstances could not be considered in the sentencing decision. He argues that the failure of the trial court to consider such nonstatutory factors violated the injunction of this Court in *Lockett* v. *Ohio*, 438 U. S. 586 (1978), that a death penalty scheme must not prevent the sentencer from considering "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.*, at 604; see *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982).

When presented with evidence that a sentencing judge had actually believed himself precluded from considering nonstatutory mitigating circumstances, both the Florida Supreme Court and the Court of Appeals for the Eleventh Circuit have held that a defendant is constitutionally entitled to a new sentencing proceeding. See, *e. g.*, *Harvard* v. *State*, 486 So. 2d 537 (Fla. 1986); *Songer* v. *Wainwright*, 769 F. 2d 1488 (CA11 1985). Unlike the defendants in *Harvard* and *Songer*, applicant never had the chance during postconviction proceedings to ascertain how his sentencing judge had interpreted Florida's statutory scheme. He now seeks an evidentiary hearing where he might make such an inquiry. I believe he should be given at least the chance to do so.*

I would grant the petition for certiorari and the application for a stay of execution.

---

*With respect to JUSTICE POWELL's suggestion that the merits ought not to be reached here, I note only that there is no little confusion on the procedural aspects of this case. When, in his first habeas petition, applicant raised a variant of the *Lockett* claim he raises here, the Court of Appeals incorrectly found that claim procedurally barred even though, on state collateral review, the Florida Supreme Court had reached it on the merits, 422 So. 2d 827, 832 (1982). 772 F. 2d 674, 677–678 (1985). Had the Court of Appeals properly considered that claim, this second habeas petition might not have been necessary.