BARKETT, Circuit Judge,
dissenting from denial of rehearing en banc:
As an initial matter, I agree with Judge Tjofiat that the issue presented here is eminently worthy of en banc review. Furthermore, I find his reasoning extremely persuasive. However, even assuming that constitutional Booker error is not “structural,” I believe that the panel erroneously applies Jones v. United States, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999), instead of United States v. Dominguez Benitez, 542 U.S. 74, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). In so doing, the panel erroneously requires the defendant to prove that his “substantial rights” were affected by a preponderance of the evidence, instead of requiring him to prove only a “reasonable probability” that, but for the error, the outcome of the district court proceedings would have been different.
Rodriguez[1] is a Booker “pipeline” case wherein the defendant was unconstitutionally sentenced before Booker was decided but did not preserve the error for appellate review. Conceding that the defendant had met the first two prongs of the “plain error” test, Rodriguez addressed the question posed by the third prong of that test, whether the defendant could prove that the constitutional violation affected his “substantial rights.” Rodriguez, 398 F.3d *1299 at 1299-1300. Rodriguez held that if the evidence is in equipoise, the defendant has not met his burden of proof. Id. I believe this conclusion conflicts with the holding of Dominguez Benitez, and indeed, applies the preponderance of the evidence test, a standard of proof Dominguez Benitez specifically rejected.
In Dominguez Benitez, the Supreme Court specifically clarified: (1) that a defendant proves that an error affects his substantial rights by establishing a “reasonable probability” that, but for the error, the outcome of the district court proceedings would have been different;[2] (2) that a reasonable probability of a different result is one that is “sufficient to undermine confidence in the outcome of the proceeding;”[3] and (3) that this “reasonable probability” standard differs from the “less defendant-friendly ‘more likely than not’ ” preponderance of the evidence standard.[4]
I agree that the defendant bears the burden of proving this “reasonable probability.” However, I believe the defendant meets this burden by showing that: (1) the guidelines were mandatory and that nothing in the record indicates that the district court applied the guidelines in a non-mandatory fashion;[5] and (2) nothing in the record indicates that the district court would apply the same or a greater sentence on remand under the new, advisory guidelines.
Although the panel repeatedly cites to the “reasonable probability” standard of Dominguez Benitez as the touchstone of its inquiry, talismanic repetition of the proper standard does not necessarily translate into its faithful application. Despite the panel’s repeated assertions to the contrary, id., 398 F.3d at 1299-1301, the test it applies appears identical to a “preponderance of the evidence” standard, a standard Dominguez Benitez explicitly rejects as excessively stringent. Rodriguez states that:
if it is equally plausible that the error ivorked in favor of the defense, the defendant loses; if the effect of the error is so uncertain that we do not know which, if either, side it helped the defendant loses. Where errors could have cut either way and uncertainty exists, the burden is the decisive factor in the third prong of the plain error test, and the burden is on the defendant.
Id. at 1300 (emphasis added).
Requiring a quantum of proof beyond equipoise is the preponderance of the evidence standard. Under the preponderance of the evidence test, the defendant loses when the evidence is in equipoise because he did not present that slight quantum of evidence necessary to tip the balance from equipoise to his favor. See, e.g., Nat’l Lime Ass’n v. Envtl. Prot. Agen *1300 cy, 627 F.2d 416, 453 n. 139 (D.C.Cir.1980) (“[T]he standard of ordinary civil litigation, a preponderance of the evidence, demands only 51% certainty.”); Black’s Law Dictionary 1201 (7th ed.1999). However, Dominguez Benitez says that the “reasonable probability” standard is more lenient than the preponderance of the evidence test. Dominguez Benitez, 124 S.Ct. at 2342 (Scalia, J., concurring in the judgment); id. at 2340 n. 9. Thus, equipoise must of necessity be sufficient to satisfy the lesser burden of a reasonable probability.[6]
To support this de facto preponderance of the evidence standard, Rodriguez reaches back to the 1999 decision Jones v. United States, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370, in which the Supreme Court noted that when it was “just as likely” that an error prejudiced the defendant as not, the defendant cannot- meet his burden of showing that the error affected his substantial rights. Rodriguez, 398 F.3d at 1299-1301 (citing Jones, 527 U.S. at 394-95, 119 S.Ct. 2090). However, Jones was decided well before Dominguez Benitez specifically enunciated the standard by which the defendant must prove prejudice in the plain-error context.
Obviously, we cannot hold that the Supreme Court has implicitly overruled Jones in Dominguez Benitez. Rodriguez de Quijas v. Shearson/American Express Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).[7] However, we are confronted with language in Jones that is *1301 in direct conflict with the “reasonable probability” standard of Dominguez Benitez, stating that a defendant cannot prove prejudice when it is “just as likely” as not that an error was prejudicial. The question, therefore, is not whether Dominguez Benitez implicitly overruled Jones by undermining its underlying rationale, but rather how to resolve these seemingly irreconcilable cases.[8]
The Supreme Court offers little guidance, if any, about the role of a Court of Appeals when faced with conflicting precedent, although Justice Scalia has recognized that such situations do arise. Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 841, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring). However, the Seventh Circuit, when faced with the conflict Justice Scalia acknowledged in Bonjomo, offered some helpful advice. It stated that when we are faced with conflicting Supreme Court precedent, we should attempt to reconcile the two eases in a manner which comports with their underlying policies. Mozee v. Am. Commercial Marine Svc. Co., 963 F.2d 929, 935 (7th Cir.1992) (citing Rodriguez de Quijas, 490 U.S. at 484, 109 S.Ct. 1917). In particular, it reasoned that we should begin by asking “which line of cases embodies the general rule of construction and which line of cases has more limited appli-eability.” Id. An estimation of which holding the Supreme Court would likely apply if presented with the case may also suggest the preferred precedent. Easter House v. Felder, 910 F.2d 1387, 1409 (7th Cir.1990) (en banc) (Easterbrook, J., concurring) (“Inconsistent lines of precedent are common in American law.... Such hair-splitting leaves judges of the inferior federal courts in a difficult position, because any effort to reconcile and apply the cases will be met with a convincing demonstration ... that there is a fly in the ointment.... I believe that despite the force of [the dissent’s] arguments, [the majority] offers the best estimate of the course a majority of the [Supreme] Court will take, and I therefore join [its] opinion.”).
It is hard to see why we would not decide that Dominguez Benitez, and not Jones, is the controlling case here. Whereas Jones simply noted that, even if a constitutional violation did exist, the defendant’s showing would not satisfy the “substantial rights” prong under the facts in that case, 527 U.S. at 394-95, 119 S.Ct. 2090, Dominguez Benitez undertook to clearly articulate a burden of proof for plain-error cases generally. 124 S.Ct. at 2336. Moreover, Jones could not, as Judge Carnes suggests, have applied the Dominguez Benitez standard to a situation *1302 “where there is no indication whether the error actually did have an adverse effect on the outcome of the proceeding.” Ante at 1276-78 (Carnes, J., concurring in denial of reh’g en banc). The simple fact that Jones was decided over five years before Dominguez Benitez established the “reasonable probability” standard belies any argument that Jones somehow constitutes an application of that standard.
Thus, Dominguez Benitez, not Jones, embodies “the general rule of construction” relating to plain-error review. Moreover, it is more likely that a majority of the Supreme Court would determine that Dominguez Benitez applies to this case instead of Jones. Eight members of the Court signed the majority opinion in Dominguez Benitez, including the author of Jones and three of the four Justices who signed his opinion. In contrast, only five members of the Court made up the Jones majority. Further, in Jones the Supreme Court actually held that there was no error of law in the first place, and that any hypothetical error had been mitigated by the district court. Jones, 527 U.S. at 393-95, 119 S.Ct. 2090. The Jones Court noted that the substantial rights prong would not be satisfied only assuming arguendo that such a constitutional error could still be found. Id. at 394-95, 119 S.Ct. 2090. This represents a marked departure from the case at bar, where we are certain that the district court was operating under an erroneous premise of law.
Essentially, in cases like Rodriguez, where the defendant can prove that Booker error denied him a constitutionally-mandated process and that the outcome of that process cannot be known until the process actually takes place, a defendant sufficiently undermines our confidence in the outcome of his sentencing to meet the prejudice prong. See, e.g., United States v. Paladino, 401 F.3d 471, 486-87 (7th Cir.2005) (Ripple, J., dissenting from denial of reh’g en banc); see also ante, at 1286-88 (Tjoflat, J., dissenting from denial of reh’g en banc) (noting that the mandatory guidelines effectively foreclosed many avenues a defendant may now pursue in requesting a more lenient sentence, such as arguing that the recommended guidelines sentence is not a “just punishment,” or challenging the wisdom of the Sentencing Commission’s policy decisions themselves); see also United States v. Serrano-Beauvaix, 400 F.3d 50, 57-58 (1st Cir.2005) (Lipez, J., concurring); United States v. Crosby, 397 F.3d 103, 115 (2d Cir.2005).
Moreover, I believe that the result the panel reaches impermissibly trenches upon the Federal Sentencing Act’s policy of allowing “the district court, not the court of appeals, to determine, in the first instance, the sentence that should be imposed in light of certain factors properly considered under the Guidelines.” Williams v. United States, 503 U.S. 193, 205, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992) (citing a 1986 congressional amendment to the Act deleting provisions that authorized appellate courts to correct a sentence imposed as a result of an incorrect application of the guidelines). The statute itself reflects this consideration:
If the court of appeals determines that —
(1) the sentence was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate!!]
18 U.S.C. § 3742(f)(1) (2004). The Williams Court underscored the impor *1303 tance of this language in the remand process, stating that “Section 3742(f)(1) does not call for a remand every time a sentencing court might misapply a provision of the Guidelines; rather, remand is required only if the sentence was ‘imposed as a result of an incorrect application’ of the Guidelines.” Williams, 503 U.S. at 202-03, 112 S.Ct. 1112 (quoting 18 U.S.C. § 3742(f)(1)) (emphasis in original). Even under this somewhat restrictive reading of the statute, in every case involving constitutional Booker error, the district court surely has imposed a sentence “as a result of’ an incorrect application of the guidelines. Given the statutory language and the policies behind it, that error would require a remand in the absence of evidence in the record rendering it harmless.
Moreover, the Third Circuit held, pre-Booker, that this policy consideration precluded speculation about the sentence a district court would impose upon remand when determining whether a guidelines sentencing error affected a defendant’s “substantial rights,” making such errors presumptively prejudicial. In United States v. Knight, 266 F.3d 203 (3d Cir.2001), the district court applied an incorrect sentencing range, but imposed a sentence that also fell within the correct guideline range. Id. at 205. The Knight Court refused to speculate about whether the district court would impose an equivalent sentence on remand for purposes of the plain-error “substantial rights” inquiry. Id. at 208. Instead, it remanded for resentencing. Id. at 210. Quoting Williams, it stated that this approach effectuated the Supreme Court’s determination of the federal sentencing statute’s intent to allow the district court to determine the proper guidelines sentence in the first instance. Id. at 208 (quoting Williams, 503 U.S. at 205, 112 S.Ct. 1112 (1992)).[9]
Other pre-Booker precedent also presumed prejudice in cases when a sentencing error’s effect on the length of a defendant’s sentence was extraordinarily difficult to ascertain. See, e.g., United States v. Plaza-Garcia, 914 F.2d 345, 347-48 (1st Cir.1990) (Breyer, C.J.) (vacating and remanding an illegal sentence also falling within the correct guidelines range under the plain-error doctrine because it “may well have been influenced by the [erroneous] sentencing recommendation”); United States v. Reyna, 358 F.3d 344, 351-52 (5th Cir.) (en banc), cert. denied, 541 U.S. 1065, 124 S.Ct. 2390, 158 L.Ed.2d 966 (2004) (presuming that denial of defendant’s right to allocution caused prejudice, because of the nature of the right and the difficulty of proving the violation affected a specific sentence); United States v. Adams, 252 F.3d 276, 287 (3d Cir.2001) (same); United States v. Alba Pagan, 33 F.3d 125, 130 (1st Cir.1994) (“[T]he impact of the omission [of the right to allocution] on a discretionary decision is usually enormously difficult to ascertain.”); United States v. Prouty, 303 F.3d 1249, 1252-53 (11th Cir.2002) (presuming prejudice “where the defendant was not afforded the opportunity to allo-cute and the court did not impose the lowest sentence under the guidelines”). *1304 As Judge Tjoflat and Judge Lipez of the First Circuit have pointed out, the effects of constitutional Booker error are similarly hard to gauge. Ante, at 1289-91 (Tjoflat, J., dissenting from denial of reh’g en banc); Serrano-Beauvaix, 400 F.3d at 56-61 (Lipez, J., concurring); see also Paladino, 401 F.3d at 486-87 (Ripple, J., dissenting from denial of reh’g en banc); United States v. Barnett, 398 F.3d 516, 526-29 (6th Cir.2005); United States v. Crosby, 397 F.3d at 116-18.
Accordingly, I respectfully dissent from the denial of rehearing en banc.

. United States v. Rodriguez, 398 F.3d 1291 (11th Cir.2005).

. Dominguez Benitez, 124 S.Ct. at 2340.

. Id. (internal quotation marks omitted) (citing Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

. Id. at 2342 (Scalia, J., concurring in the judgment) (emphasis added); see also id. at 2340 n. 9 ("The reasonable-probability standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence .that but for error things would have been different.”).

. For example, in Booker, the district court in defendant Fanfan's case did not apply applicable provisions of the guidelines even though they were mandatory at the time. United States v. Booker, - U.S. -, 125 S.Ct. 738, 747, 160 L.Ed.2d 621 (2005).

. Judge Carnes argues that my reading of the "reasonable probability” standard differs from prior Circuit case law. He states that we have held in several cases that a defendant failed to meet the "reasonable probability” standard when there was no evidence on the record that an alleged error prejudiced him. Ante, at 1275-76 (Carnes, J., concurring in denial of reh’g en banc). However, I do not believe that any of the cases he cites are of particular significance to the inquiiy here. In each case there was record evidence contradicting the defendant's claims of prejudice.
In Henry v. Wainwright, the judge failed to instruct the jury about the consequences of a 6-6 split over whether to sentence the defendant to death. 743 F.2d 761, 763 (11th Cir.1984) (per curiam). However, the record contained evidence suggesting that the jury was never actually deadlocked, belying the defendant’s claim that die lack of an instruction prejudiced him. Id. Adams v. Wainwright presented a similar jury instruction claim in which the court felt "[b]ound by” Henry because there was no evidence that a deadlock ever existed in the first place, 764 F.2d 1356, 1369 (11th Cir.1985), and also presented an ineffective assistance of counsel claim wherein the defendant failed to rebut a "strong presumption” that a jury is presumed to have followed the trial court’s express, and correct, instructions. Id. And in Straight v. Wainwright, the defendant’s theory of prejudice stemming from allegedly ineffective assistance of counsel was so attenuated as to border on the incredulous. 772 F.2d 674, 680 (11th Cir.1985). There, the defendant claimed that his attorney rendered ineffective assistance by failing to "rehabilitate" jurors who had stated "either that they could not return a death penalty in any case or that they could not evaluate the evidence fairly, knowing that the defendant was charged with a capital crime.” Id. He contended that if his attorney had successfully coaxed out more ambiguous answers about jurors’ sentiments with respect to the death penalty through further questioning, the prosecution would not have been able to strike them for cause, and would thus have had to expend "expensive” peremptory challenges to eliminate them. Id. The result, apparently, would have been a jury somewhat less inclined to sentence the defendant to death. Id.
In Rodriguez, in contrast, the defendant’s theory of prejudice requires no such flights of fancy. We are certain that the district court erred, and the chance that this error prejudiced the defendant is quite real — just as likely as not, as the panel itself admits. Further, there is no evidence on the record in Rodriguez contradicting a showing of prejudice.

. Indeed, that doctrine applies to situations, unlike this one, where one Supreme Court case is unmistakably on point, but where the rationale underlying that decision has been *1301 undermined indirectly by subsequent cases. See, e.g., Tenet v. Doe, - U.S. -, 125 S.Ct. 1230, 1238, 161 L.Ed.2d 82 (2005); Hohn v. United States, 524 U.S. 236, 252-53, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998); Agostini v. Felton, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997); Am. Trucking Ass'ns Inc. v. Smith, 496 U.S. 167, 180, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (plurality opinion).

. It would appear that we are encountering the difficulty of applying the various standards for analyzing "prejudice” that Justice Scalia predicted in Dominguez Benitez, 124 S.Ct. at 2342 (Scalia, J., concurring) ("By my count, this Court has adopted no fewer than four assertedly different standards of probability relating to the assessment of whether the outcome of trial would have been different if error had not occurred.... Such ineffable gradations of probability seem to me quite beyond the ability of the judicial mind (or any mind) to grasp.... That is especially so when they are applied to the hypothesizing of events that never in fact occurred.”).

. Indeed, this circuit has expressed similar concerns. In determining that a defendant could appeal a sentence enhancement where the sentence also fell within the guidelines range he had advocated before the district court, we said that we were "not willing to speculate as to whether appellant’s sentence would have been the same without the enhancement. In our view, that determination is for the district court in the first instance.” United States v. Fuente-Kolbenschlag, 878 F.2d 1377, 1379 n. 7 (11th Cir.1989).