559 So.2d 1097 (1990)
Jerry WHITE, Appellant,
v.
STATE of Florida, Appellee.
No. 71679.
Supreme Court of Florida.
March 15, 1990.
Rehearing Denied May 24, 1990.
*1098 Larry Helm Spalding, Capital Collateral Representative, and Billy H. Nolas and Carlo Obligato, Staff Attys., Office of the Capital Collateral Representative, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard B. Martell, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Jerry White, under sentence of death, appeals the denial of postconviction relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
White was convicted of robbing a small grocery store and shooting to death a customer. The court imposed life imprisonment for the armed robbery conviction and, following the jury's recommendation, death for the murder conviction. The convictions and sentences were affirmed on appeal. White v. State, 446 So.2d 1031 (Fla. 1984). Subsequent to the signing of the death warrant, White filed a rule 3.850 motion and application for stay of execution. The stay was granted and the motion denied following an evidentiary hearing. This appeal followed. White raises seven issues: 1) ineffectiveness of counsel, 2) diminished jury role, 3) exclusion of black jurors, 4) exclusion of jurors opposed to capital punishment, 5) withholding of evidence, 6) insufficient finding of intent to kill, and 7) death by electrocution is cruel and unusual. We limit our discussion to the first issue; the others were either addressed on direct appeal or are without merit.
White asserts that his trial counsel was ineffective in three ways. First, he says the lawyer should have presented, or at least considered, the defense of voluntary intoxication in light of the extensive evidence that White was drunk at the time of the crimes. He says that many witnesses commented on White's drunken state, and that a blood alcohol level taken at the hospital several hours after the crime was nearly double the legal limit under the state's DUI statute. Had such a defense been presented, White claims, the jury may have found that he lacked the intent required for robbery or the premeditation necessary for first-degree murder. Second, he asserts that trial counsel should not have allowed him to take the stand in his own defense. Third, he claims that his lawyer's performance was generally ineffective for the following reasons: trial counsel was drunk or on drugs during the trial, the jury laughed at him, two newspapers commented on his incompetence, he was grossly unprepared, he failed to object at critical points, he failed to interview friends and family and present mitigating evidence at sentencing.
The standard for determining whether counsel's assistance was so defective as to require reversal was set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death *1099 sentence resulted from a breakdown in the adversary process that renders the result unreliable.
We do not believe that counsel's performance requires reversal under this standard.
According to trial counsel's testimony at the evidentiary hearing, he rejected intoxication as a defense because it was inconsistent with the deliberateness of White's actions during the shootings. The court agreed with this view in its findings of fact:
It is clear from all of the pleadings in this case, as well as the bulk of the testimony presented at the Evidentiary Hearing, that the defense relies strongly upon the failure of trial counsel to present the intoxication defense. Of course, this is rebutted by the Defendant's detailed account of the facts of the incident. The Defendant's version of the events in question was represented by his detailed presentation to the jury. It would appear that the intoxication defense is incompatible with the Defendant's testimony. Years later, attorneys now argue that Defendant should not have taken the stand in order to present the intoxication defense. But the facts are clear, the Defendant wanted to take the stand to tell his story. Trial counsel ... testified that the defendant told him that he testified truthfully at the trial and even provided [counsel] with a handwritten statement consistent with his trial testimony. Trial counsel had to fashion a defense compatible with defendant's testimony which did not include raising the intoxication defense. Failure to do so under the facts of this case, is not ineffective assistance of counsel. Counsel's objections are usually based, on informed strategic choices made by the defendant and on information supplied by the defendant. This Court concludes that [counsel's] decision that the Defendant's detailed story would be inconsistent with the presentation of the intoxication defense was a reasonable tactical decision under the circumstances of this case.
The finding that the intoxication defense would have been incompatible with the deliberateness of White's actions is borne out by the evidence: White took a loaded gun into the store; the victims both were shot in the back of the head; White took the money from the store; he ran to his car steadily after the shootings and drove away capably; he had a change of clothes ready in the car and was able to change and discard his old clothes; he was able to dispose of the murder weapon in such a way that it has never been found. The prosecutor testified that White's own testimony was inconsistent with an intoxication defense and that trying to present this defense in tandem with White's theory of self-defense would have been like "riding two horses." The fact that counsel did not prevent White from testifying can hardly be termed a deficiency; White exercised his basic right to testify in his own behalf.
We also find insufficient evidence to support White's claim that representation was incompetent because counsel was intoxicated during the course of the trial. The trial court properly concluded that based upon the evidence
[t]he defendant failed to meet his burden of proof that trial counsel ... was under the influence of alcohol, cocaine, morphine, methaqualude or marijuana during the course of the Defendant's trial. It was clear from the testimony of private attorney, F. Wesley Blankner, who prosecuted this case as an Assistant State Attorney, that [counsel] was not under the influence of any intoxicant during this trial. At the Evidentiary Hearing, attorney Blankner, stated that he checked [counsel's] breath daily, that he had numerous contacts with [counsel] during the process of trial and that he was not intoxicated during trial. Defendant was unable to present any credible evidence to the contrary.
While counsel did state that he was experiencing health problems at the time of trial, this fact alone does not render his performance ineffective.
The defense lawyer's failure to object to testimony concerning Alexander's medical condition was addressed on appeal. *1100 See White, 446 So.2d at 1034 ("we do not find this error to be of the magnitude that would have prevented the jury from reaching a fair and impartial verdict"). Although counsel failed to voice appropriate objections at several other points in the proceeding, few trials proceed without any such error and "[i]t is almost always possible to imagine a more thorough job being done than was actually done." Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.), cert. denied, 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986). We note also that the defense called five witnesses at the penalty phase, and that White's claims of ineffectiveness based on counsel's unconventional courtroom actions can be attributed to trial strategy and courtroom style, as noted by the court below:
It was clear from the testimony of Mr. Blankner, that a question of style may [not] now [be] interpreted as incompetence of counsel. Testimony from Mr. Blankner, indicated that the style of [trial counsel], was generally an attempt to confuse jurors with a rambling kind of style. This jumping around was an effort to confuse juries to get them off the point, to get them off the evidence. Evidently this procedure and method of style had worked for [counsel] in other cases.
We conclude that White's claim of ineffective counsel fails under Strickland.
We affirm the decision of the trial court.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW and GRIMES, JJ., concur.
BARKETT, J., dissents with an opinion, in which KOGAN, J., concurs.
BARKETT, Judge, dissenting.
I cannot concur in the majority's conclusion that appellant received a fair trial with effective assistance of counsel.
KOGAN, J., concurs.