**Jerry WHITE, Petitioner–Appellant,**

v.

**Harry K. SINGLETARY, Secretary, Florida Department of Corrections, Respondent–Appellee.**

No. 90–3629.

United States Court of Appeals, Eleventh Circuit.

Sept. 3, 1992.

**1220**

Billy H. Nolas, Julie D. Naylor, Ocala, Fla., for petitioner-appellant.

Richard B. Martell, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for respondent-appellee.

Before KRAVITCH, EDMONDSON and BIRCH, Circuit Judges.

EDMONDSON, Circuit Judge:

Jerry White was convicted of robbing a grocery store and shooting to death a customer. The murder conviction and the sentence of death were affirmed. *White v. State*, 446 So.2d 1031 (Fla.1984). White later filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. The motion was denied following an evidentiary hearing. The denial was affirmed. *White v. State*, 559 So.2d 1097 (Fla.1990).

White then petitioned the Florida Supreme Court for writ of habeas corpus; the court denied White's petition. *White v. Dugger*, 565 So.2d 700 (Fla.1990). Pursuant to 28 U.S.C. § 2254, White filed for a writ of habeas corpus in the Middle District of Florida. Without holding an evidentiary hearing, the district court order denied White relief.

## I.

White claims that he received ineffective assistance of counsel during the guilt phase and the sentencing phase of his trial. For White to prevail on this claim, he has the burden to establish two components: that his trial counsel's performance was deficient and that this performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* held that in evaluating whether a trial counsel's performance was deficient, the counsel's performance must be evaluated for "reasonableness under prevailing professional norms." *Id.* at 688, 104 S.Ct. at 2065. The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Id.* at 689, 104 S.Ct. at 2065.

*Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

### A. Guilt Phase

### 1. Voluntary Intoxication Defense

■ White asserts that his trial counsel was ineffective for failing to present the defense of voluntary intoxication because evidence existed that White was drunk at the time of the crime. White insists that many witnesses commented on White's drunken state and that a blood alcohol level taken at the hospital several hours after the crime was nearly double the legal limit under Florida's DUI statute. Had such a defense been presented, White claims, the jury might have found that he lacked the intent required for robbery or the premeditation necessary for first-degree murder.[1]

In *Harich v. Dugger,* 844 F.2d 1464 (11th Cir.1988) (en banc), we previously addressed this kind of issue. In *Harich,* defendant took the stand and testified that, although he was with the victim the evening of the murder, he was innocent of wrongdoing. *Id.* at 1470. He also indicated that he was under the influence of drugs and alcohol that evening. Armed with these facts, the defense counsel adopted the defense strategy of asserting chiefly factual innocence. *Id.* As in the present case, defendant in *Harich* suggested later that defense counsel should have employed the alternative defenses of voluntary intoxication. The *Harich* court held, however, that defendant must prove that the approach taken by defense counsel would have been used by no professionally competent counsel and that the approach taken by counsel was one which did not fall "within the objective yardstick that we ap-

ply when considering the question of ineffectiveness of counsel." *Id.* at 1470–71. The *Harich* court specifically noted that "[a]lthough inconsistent and alternative defenses may be raised, competent trial counsel know that reasonableness is absolutely mandatory if one hopes to achieve credibility with the jury." *Id.* at 1470. The *Harich* court concluded that suggesting to the jury that Harich was so drunk that he could not have intended the consequences of his acts would have totally undermined the position by Harich himself when he testified.[2] *Id.*

In the present case, White's trial counsel testified at the evidentiary hearing that he rejected intoxication as a defense because it was inconsistent with the deliberateness of White's actions during the shootings. White had the presence of mind before the robbery to park his car in a direction which accessed a speedy getaway. White brought a gun with him into the store. Once inside the store, White escorted both his victims into the freezer in the back of the store and shot them in the back of their heads. White evidently brought along a set of clothes to change into after the robbery. These acts are hardly consistent with a person so impaired as to be unable to form the intent required for committing the crime charged. Thus, nothing was shown in this case to prove that White's counsel's decision not to raise the voluntary intoxication defense was beyond the range of reasonable professional judgment. As we said in *Harich,* "[a] competent attorney completely informed in the intoxication defense and faced with a defendant advocating his factual innocence could well have taken action identical to counsel in this case." *Id.* at 1471.[3]

### 2. Counsel's Alleged Incapacity at the Time of Trial

■ White claims that his attorney, Emmett Moran, was ineffective because

---

**1.** Under Florida law, voluntary intoxication is a defense to first degree murder when the intoxicant renders the defendant incapable of forming the intent to commit the crime. *See Gardner v. State,* 480 So.2d 91 (Fla.1985).

**2.** In *Harich,* during defendant's testimony, he recounted details about what he did and where

he went. The jury did not believe his testimony, rejecting it in favor of the testimony of the victim who survived.

**3.** White took the stand at his trial and offered a story of factual innocence based on self-defense. *See White,* 446 So.2d at 1035.

Moran was under the influence of drugs and alcohol during the guilt and penalty phase of White's trial. The state trial court conducted an extensive hearing on this issue in 1986.

In *Meeks v. Singletary*, 963 F.2d 316, 319 (11th Cir.1992), we noted that "[i]t is well established that a habeas petitioner is entitled to an evidentiary hearing on a claim *if he or she alleges facts that, if proved at the hearing, would entitle petitioner to relief.*" The *Meeks* court stressed, however, that "an evidentiary hearing may not be required if a state court has made findings as to those very facts." *Id.* In such an instance, the state court's factual findings would be entitled to a presumption of correctness as set out in 28 U.S.C. § 2254(d).

Evidence that Moran—at the time of White's trial in 1982—was intoxicated, through the use of alcohol and drugs, was presented at the state court evidentiary hearing. Evidence was also presented to the contrary: the trial prosecutor specifically testified that Moran had not been intoxicated at the time of the trial; and Moran himself, vehemently denied the allegations. The state court judge who presided over the hearing made a specific finding that attorney Moran "was not under the influence of any intoxicant during the trial" and stated that White failed to present credible evidence to the contrary. The Supreme Court of Florida affirmed the trial court's determination. *White*, 559 So.2d at 1099. After reviewing the record, the district court concluded that the state court was justified in finding counsel was under the influence of neither alcohol nor drugs during his representation of White. Because White failed to prove an exception to the presumption of correctness owed by federal courts to state courts, we will not disturb the district court's finding.

White also contends that Moran suffered serious health problems which affected his ability to render effective assistance of counsel. Although it is undisputed that Moran had health problems, the district court specifically found that none made his legal assistance constitutionally ineffective. *See Messer v. Florida*, 834 F.2d 890, 897 (11th Cir.1987) (a tired trial attorney is not necessarily an ineffective attorney); *King v. Strickland*, 714 F.2d 1481, 1489 (11th Cir.1983) (same). Again, we accept the district court's findings.

### 3. Counsel's Handling of Voir Dire

▮▮▮ White complains that counsel was ineffective for failing to object to the excusal for cause of those jurors who were reluctant to impose the death penalty. White also insists that counsel was continually confused as to the number of peremptory challenges allotted to him and was incompetent when he allowed jurors who had read about the case to become jurors.

The record reflects that the five prospective jurors who were excused for cause due to their views on the death penalty had all stated that they were unalterably opposed to the death penalty and would not impose the death penalty under *any* circumstances. In *Straight v. Wainwright*, 772 F.2d 674 (11th Cir.1985), we held that it cannot be assumed that veniremen opposed to the death penalty could have been persuaded to change their positions due to a rehabilitation effort on the part of defense counsel. Because it cannot be assumed that counsel could have changed the strong opinions of these prospective jurors, White's contention that counsel was ineffective for failure to rehabilitate is meritless.

White complains that Moran was confused about the number of peremptory challenges he had available. The record indicates that the trial judge erroneously advised White's counsel that counsel was out of peremptory challenges. White argues that the court's mistake "confused" defense counsel.[4] The court, however, realized the mistake the next day and told counsel that he had one peremptory challenge left. Counsel then used this challenge. No prejudice resulted to White as the trial judge allowed both parties to back-

---

4. That counsel immediately noticed the mistake and was "confused" about the court's incorrect accounting supports the alertness and effectiveness of counsel.

strike up until the time the jury was sworn. White, therefore, has shown neither deficient performance on this claim nor prejudice. *See Strickland, supra.*

White next says that counsel should have allowed no jurors to sit who had read about the case. In *Bertolotti v. Dugger,* 883 F.2d 1503, 1521 (11th Cir.1989), we held that if jurors can lay aside preconceptions and base their verdict on the evidence adduced at trial, they need not be completely unaware of the facts of a given case. The jurors who had read about the *White* case indicated that they maintained no preconceived opinions about the case. Thus, according to *Bertolotti,* these jurors did not need to be excused, and thus counsel was not ineffective for failing to excuse them. Once again, therefore, White has not sustained his burden of proof on this claim or showed prejudice. *See Strickland, supra.*

### 4. Counsel's Handling of the Trial

■ White presents an exhaustive list of what he views as counsel's errors at trial, stressing that counsel failed to elicit appropriate information from several of the state's witnesses. What White cites as "errors," however, simply constitute counsel's trial strategy. At the state court evidentiary hearing, the court concluded that counsel purposely chose a rambling style to confuse witnesses and, in turn, to raise doubt in the minds of the jury. *White,* 559 So.2d at 1100. The district court agreed with the state court's conclusion and specifically noted that the "rambling, 'confused' approach was employed by trial counsel in an effort to make the state's evidence appear disjointed and to emphasize any reasonable doubt in the jurors' mind."

Apart from the rambling style of defense counsel, White has failed to point out what testimony gleaned from the state's witnesses would have changed the outcome of the

trial. In *Aldrich v. Wainwright,* 777 F.2d 630 (11th Cir.1985), we held that the prejudice requirement under *Strickland* is never satisfied where petitioner fails to indicate what information defense counsel should have discovered and what impact such information would have had on impeachment of state witnesses. Once again, therefore, White has failed to satisfy the requirements of *Strickland* on this claim of ineffective assistance.[5]

### 5. Counsel's Handling of the Suppression Motion

■ White also contends that trial counsel rendered ineffective assistance in his handling of a suppression motion during the trial. White, while at a hospital, gave a statement to the police to the effect that he had entered the store when no one else was there and had been shot by a black man. The issue at the state court suppression hearing was whether White's statement, which was used only for impeachment, was voluntary. White claims he was given Demoral before making the statement, and insists that counsel should have introduced expert testimony at the state suppression hearing about the effects of Demoral. White also contends that trial counsel's announcement to the jury that he was moving to suppress the statement, represented deficient conduct. Although the district court addressed the issue of the admissibility of White's statement and found it to be properly admitted, the district court did not specifically address this claim of ineffective assistance of counsel.

White's medical records introduced into evidence indicated that White was given an injection of Demoral fifteen minutes after the police took his statement. The record contains journal entries which, in sequential order, list the arrival of the detectives, the reading to White of his *Miranda* rights, and then the administration of De-

---

**5.** In his brief, White mentions other alleged failures on the part of counsel, including counsel's failure to object to the government's exhibits, to certain comments made by the prosecution, and to the trial court's failure to instruct the jury on the lesser-included offenses. White also contends that his trial counsel was ineffec-

tive for failing to preserve certain claims for review. Trial counsel explained that in many of these instances he made a tactical decision not to antagonize the jury by raising an objection. Also, White is entitled to no relief on these claims because no prejudice was shown so as to merit relief under *Strickland.*

moral. No evidence was ever presented that White was given any drug before his interview with the police. Thus, if White's trial counsel had tried to present expert evidence on the effects of Demoral, such evidence would have been disregarded because it was irrelevant.

### 6. Counsel's Alleged Disloyalty to his Client

■ White contends that his counsel made a number of racist statements, as well as other comments which could be interpreted as disparaging remarks about him. White claims his representation was thus tainted by his counsel's racist attitudes and flagrant disloyalty.

The district court made extensive findings and flatly rejected White's claim of disloyal counsel. Rather than being disloyal, it appears counsel did much to insure White's acquittal.[6] We adopt the district court's findings of fact on this issue as not clearly erroneous and therefore reject White's claim of ineffective assistance of counsel on this issue.[7]

### B. Sentencing Phase

White argues that he received ineffective assistance of counsel during the sentencing phase of his trial. He contends that his counsel at sentencing was unprepared to put on an effective defense.

### 1. Counsel's Alleged Failure to Prepare and Present Background Information in Mitigation

■ White says that trial counsel failed to conduct an adequate investigation into his background and history, resulting in the deprivation of powerful evidence in mitigation which could have been used at the penalty phase of trial. He claims that as a

result he was denied effective assistance of counsel.

While "[i]t should be beyond cavil that an attorney who fails altogether to make any preparations for the penalty phase of a capital murder trial deprives his client of reasonably effective assistance of counsel by any objective standard of reasonableness," *see Blake v. Kemp*, 758 F.2d 523, 533 (11th Cir.1985), it is unclear how detailed an investigation is necessary to provide a defendant with the effective assistance of counsel. *Strickland* only requires that counsel's actions fall within the wide spectrum of what can be considered reasonable assistance of counsel.

In *Gates v. Zant*, 863 F.2d 1492, 1498 (11th Cir.1989), we recognized that:

[g]iven the finite resources of time and money that face a defense attorney, it simply is not realistic to expect counsel to investigate substantially all plausible lines of defense. A reasonably competent attorney often must rely on his own experience and judgment, without the benefit of a substantial investigation, when deciding whether or not to forego a particular line of defense without substantial investigation so long as the decision was reasonable under the circumstances.

In the present case, counsel had spoken with family members in preparing for the penalty phase. After concluding his investigation, counsel called five witnesses to testify at the penalty phase, including White's uncle, mother and fiance. They testified to the hardships of White's life: the deaths of White's father and stepfather, being raised by his mother alone, the health problems he had, and his trouble with alcohol. They also testified about White's good character.

---

**6.** White also claims that by the time the trial reached the penalty phase, his counsel was indifferent to his client's fate. The district court found and concluded, however, and we agree, that the adversarial process was very much alive. During his closing argument, counsel vigorously argued that White should not receive the death penalty. White has failed to show indifference.

**7.** A federal appellate court may set aside a district court's findings of fact only if they are "clearly erroneous." *Amadeo v. Zant*, 486 U.S. 214, 223, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988).

At the state court evidentiary hearing on whether counsel was ineffective for failing to investigate further into White's background, the same witnesses who had testified at the initial penalty phase proceeding testified again. Much of the identical testimony was presented at this time, only in greater detail.[8] We cannot say that every reasonable and fully informed attorney would, in the context of this case, have presented at the penalty phase more testimony on the hardships of the White family. *See Bertolotti,* 883 F.2d at 1519 ("[B]ecause the evidence itself has substantial internal weaknesses, we question whether counsel would have presented the evidence to the jury had counsel possessed it."). Nor can we say that deciding not to dwell on the hardship testimony deprived White of effective assistance of counsel. White's counsel's strategy for the penalty phase was to present White in the best possible light and to avoid contradicting White's trial testimony. Thus, he tailored the evidence presented at the penalty phase to fit his strategy. We cannot say that White's trial counsel strategy was unreasonable.

White insists, however, that, under the law, his counsel should have investigated further to uncover as much evidence in mitigation as possible. Unlike the case of *Cunningham v. Zant,* 928 F.2d 1006, 1017 (11th Cir.1991), in which we faulted trial counsel for failing to present any evidence to the jury on defendant's minimal schooling, on his poverty-stricken socioeconomic background, or on the fact his father died when he was five, in the present case, White's counsel did bring in evidence of White's difficult upbringing. In *Blanco v. Singletary,* 943 F.2d 1477, 1501 (11th Cir. 1991), we held that counsel was ineffective

because he failed personally to seek out any witnesses specifically for sentencing. Again, however, the present case can be distinguished because White's counsel did find and call five witnesses to testify on his behalf at the penalty phase. Although "[a] lawyer can almost always do something more in every case ... the Constitution requires a good deal less than maximum performance." *Atkins v. Singletary,* 965 F.2d 952, 960 (11th Cir.1992). In this case, counsel did enough. *See id.*

White's counsel in this case investigated White's background and presented at the penalty phase that evidence which he thought would be most helpful. White, therefore, has failed to show how his counsel's actions deprived him of effective assistance of counsel. In addition, White failed to show how he was prejudiced by his counsel omitting the additional background information from the penalty phase. *See Strickland, supra.*

2. Counsel's Alleged Failure to Present Evidence of Intoxication in Mitigation

■ White contends that counsel failed to present expert testimony about the effects of White's intoxication. As discussed above, counsel did present some evidence of White's intoxication during the sentencing phase of the trial.

Both White's uncle and mother testified at the sentencing hearing that White "shouldn't drink" because he suffers from blackouts. White insists, however, that reasonably competent counsel would necessarily have presented expert testimony on White's history of intoxication and intoxication at the time of the offense.[9]

---

**8.** At the state court evidentiary hearing one fact that was discovered that had not been used at the penalty phase of White's trial related to White's early life when his family lived in poverty. When White committed the crime underlying this case, he was 33. An informed, reasonable lawyer could choose to omit this evidence because it was so remote in time and hardly unique. *See Bertolotti v. Dugger,* 883 F.2d 1503 (11th Cir.1989) (defense counsel was found to have provided effective assistance on claim that counsel overlooked evidence of defendant's

traumatic childhood, where counsel interviewed defendant's parents).

**9.** Although an expert could have testified, it is important to note that such an expert would have been subject to cross-examination and forced to explain how White's alleged intoxication was consistent with White's story about his crime and his thoughtful actions surrounding the crime. *See Bertolotti,* 883 F.2d at 1517 (counsel's failure to present equivocal psychiatric testimony, which would have been subject to substantial impeachment, not prejudicial).

Once again, we are presented with a question of judgment for counsel. It was counsel's strategy not to dwell on the intoxication issue for principally two reasons: (1) the evidence contradicted the trial testimony that defendant acted in self-defense—such a contradiction might well have antagonized the jurors, and (2) the general disdain which jurors hold for drunkenness as an excuse for violent behavior. Counsel's rationale is reasonable. Therefore, the first requirement under *Strickland* has not been met.

### 3. Counsel's Alleged Mishandling of his Client's Prior Convictions

The last issue which White raises with respect to errors at the penalty phase is counsel's handling of White's earlier convictions. White contends that the underlying convictions, pursuant to which the trial court found the aggravating circumstance of prior violence under Fla.Stat. § 921.-141(5)(d), were replete with constitutional error.

White does not specify the constitutional errors, but merely states that several guilty pleas which were used in part to support the prior violent felony aggravating factors were not knowingly and voluntarily entered. The district court correctly held that this claim is procedurally barred and that White has alleged neither cause nor prejudice. Even on the merits, the district court concluded that White failed to allege with specificity the particular error which allegedly inflicted his prior felony convictions.

### II.

White claims that his death sentence must be reversed due to an alleged violation of *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). On direct appeal, the Florida Supreme Court struck the "pecuniary gain" aggravating factor as constituting improper "doubling" with another aggravating factor and struck the "cold, calculated and premeditated" aggravating factor as unsupported by the evidence. *White v. State*, 446 So.2d 1031, 1037 (Fla.1984). The state supreme court held that only two aggravating factors properly applied: that White had a previous felony conviction and that the homicide occurred during the commission of a robbery. *Id.* White argues that his case should have been remanded for resentencing because the jury's recommendation was "tainted" by the presentation of improper aggravating factors.

Both on direct appeal and when White presented this claim to the Florida Supreme Court in his 1990 habeas corpus petition, that court noted that "[w]hen there are one or more valid aggravating factors which will support a death sentence, in the absence of any mitigating factor(s) which might override the aggravating factors, death is presumed to be the appropriate penalty." *White*, 446 So.2d at 1037; *White*, 565 So.2d at 702. In White's case, there were two remaining aggravating factors and no mitigating factors.[10] In the 1990 habeas corpus proceeding, the Florida Supreme Court applied the harmless error analysis and concluded that *"the trial court's ruling would have been the same beyond a reasonable doubt even in the absence of the invalid aggravating factors."* *White*, 565 So.2d at 702 (emphasis added).

In *Clemons*, the Supreme Court approved of the use by state courts of "harm-

---

**10.** On direct appeal, the Florida Supreme Court addressed White's contention that the trial court ignored certain mitigating factors including intoxication. *White*, 446 So.2d at 1036. The Florida Supreme Court noted that "[t]he record reflects that the court expressly considered the evidence that appellant had been drinking alcoholic beverages before the crime." *Id.* The Florida Supreme Court was satisfied that the trial court carefully considered the evidence presented at both stages of the trial and that the trial court appropriately found that no mitigat-

ing circumstance existed. *Id.* We do not second guess state courts on questions of fact such as whether the evidence showed enough intoxication to justify mitigation. Here Florida says that White did not prove intoxication to the point of mitigation, and we see no compelling reason to think Florida was wrong. *Cf. Daugherty v. State*, 419 So.2d 1067, 1071 (Fla.1982) (within trial court's discretion to determine whether sufficient evidence exists of a particular mitigating circumstance).

less error" analysis to cure a trial court's erroneous application of aggravating factors in death penalty cases. In a recent case, *Sochor v. Florida*, — U.S. ——, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992), however, the Supreme Court declined to accept an implied harmless error analysis after a state court had struck an invalid aggravating factor: the Court seemed unconvinced that a harmless error analysis had actually been applied by the state supreme court. *See id.* ("Since the Supreme Court of Florida did not explain or even 'declare a belief that'· this error was harmless beyond a reasonable doubt 'in that it did not contribute to the [sentence] obtained,' the error cannot be taken as cured by the State Supreme Court's consideration of the case.").

In the present case, when White first contested the faulty aggravating factors, the Florida Supreme Court found that the record supported the finding that defendant was engaged in the commission of a robbery when the murder occurred and found that defendant had never even disputed that he was previously convicted of a felony involving the use or threat of violence to the person. *White*, 446 So.2d at 1037. The Florida Supreme Court then specifically noted that the death penalty was appropriate given the existence of these two aggravating factors and the absence of mitigating factors. *Id.* When White presented this claim to the Florida Supreme Court in his later 1990 habeas corpus petition, that court wrote this:

> White claims that this Court violated *Clemons* when it affirmed his death sentence after invalidating two of four aggravating factors. In affirming White's sentence on direct appeal, we stated:
>
>> When there are one or more valid aggravating factors which will support a death sentence, in the absence of any mitigating factor(s) which might override the aggravating factors, death is presumed to be the appropriate penalty.
>
> *White*, 446 So.2d at 1037. Regardless of this language, we are convinced that this Court properly applied a harmless error analysis on direct appeal. To remove

any doubt, we again apply this analysis and conclude that the trial court's ruling would have been the same beyond a reasonable doubt even in the absence of the invalid aggravating factors.

*White*, 565 So.2d at 702. The Florida Supreme Court was cautious, and it has expressly engaged in harmless error analysis. The Florida Supreme Court concluded, beyond a reasonable doubt, that White would not have escaped the death sentence.

Especially given the absence of mitigating factors here, the Florida Supreme Court has written enough and has acted on the question of harmless error in accord with *Sochor* and *Clemons*. Having looked at the record, we accept Florida's judgment and affirm the district court's denial of relief for this claim.

### III.

■ As his final claim for relief, White submits that his death sentence should be reversed because the jury instructions at the penalty phase and certain arguments by the prosecutor impermissibly shifted the burden of proof to the defense. In particular, White refers to the court's instructions to the jury that in rendering their advisory sentence, they must determine "whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist." White never raised this issue on direct appeal; he presented this matter to the state courts for the first time in his 1990 habeas corpus petition. And the Florida Supreme Court found this claim procedurally barred. *White*, 565 So.2d at 703.

In *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989), the Supreme Court held that procedural default by a federal habeas petitioner bars consideration of a federal claim on habeas review if the "last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." As noted above, the Florida Supreme Court addressed the precise issue presented here and expressly found it procedurally barred. *White*, 565 So.2d at

703. White has demonstrated no "cause" for such default such that a consideration on the merits is required to prevent a "miscarriage of justice," nor has he shown "actual prejudice" from the alleged constitutional defect in the jury instructions. *Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986). Therefore, we affirm the district court's order.

For all the reasons stated above, we AFFIRM the judgment of the district court.

KRAVITCH, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority opinion affirming the denial of habeas relief on White's claims relating to his conviction. I dissent, however, from that portion of the opinion that affirms denial of habeas relief on the sentencing claim.

Four aggravating factors and no mitigating factors were submitted to the jury during the penalty phase of White's trial. On direct appeal, the Florida Supreme Court struck two of these aggravating factors: (1) the "cold, calculated and premeditated" factor because it was not supported by the evidence, and (2) the pecuniary gain factor because it constituted improper "doubling." Two aggravating factors remained intact: (1) White's previous felony conviction and (2) the fact that the homicide was committed during the course of a robbery.

Despite invalidating half of the aggravating factors charged against White, the Supreme Court of Florida upheld White's death sentence because "death is presumed to be the appropriate penalty" when one or more valid aggravating factors remain and there are no mitigating factors. On habeas, the Florida Supreme Court recognized the *Clemons* requirement that a reviewing court must either (1) reweigh the factors or (2) apply a harmless error analysis before upholding a death sentence based in part on invalid aggravating factors. The Court stated that "regardless" of the language in its prior opinion, it had nevertheless engaged, at that time, in an appropriate harmless error analysis. "[T]o remove any doubt," however, the Court stated that it

had reapplied the harmless error analysis and concluded that "the trial court's ruling would have been the same beyond a reasonable doubt even in the absence of the invalid aggravating factors."

The majority believes that these bare-boned statements by the Florida Supreme Court are sufficient to meet the requirements of *Sochor* and *Clemons*, supra at 1226. I disagree. In both of these opinions, the Supreme Court indicated that a reviewing court must do more than merely state the magic words "harmless error." An individual's Eighth Amendment rights to an individualized trial are not fulfilled unless a reviewing court engages in a thorough analysis which can only be exhibited by an explanation of a court's reasons for finding harmless error.

In three recent cases, the U.S. Supreme Court has indicated that, in a weighing state like Florida, a court reviewing a death sentence following an invalidation of one or more aggravating factors must explain its reasons for finding harmless error. In *Sochor*, the Court stated that:

> Since the Supreme Court of Florida *did not explain* or even declare a belief that this error was harmless beyond a reasonable doubt ... the error cannot be taken as cured by the State Supreme Court's consideration of the case.

—— U.S. at ——, 112 S.Ct. at 2123 (emphasis added). This excerpt indicates that a reviewing court's upholding of a death sentence will only be appropriate where (1) the court makes the specific finding that the "error [of permitting an invalid aggravating factor to go to the jury] was harmless beyond a reasonable doubt" *and* (2) the court *explains* why it made this finding.

Indeed, Justice O'Connor specially concurred in *Sochor* solely to stress this point. In her concise opinion she stated that:

> before a federal constitutional error can be held harmless, the reviewing court must find "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ... This is a justifiably high standard, and while it can be met without uttering the magic words "harmless error," see ante [——

U.S. at ——, 112 S.Ct.] at 2122–2123, the reverse is not true. *An appellate court's bald assertion that an error of constitutional dimensions was 'harmless' cannot substitute for a principled explanation of how the court reached that conclusion.*

*Id.* —— U.S. at ——, 112 S.Ct. at 2123 (O'Connor, J. concurring).

The *Sochor* opinion merely reiterated the standard already set forth in *Clemons.* In *Clemons*, the court held that upon invalidation of an aggravating factor, a reviewing court may engage in a harmless error analysis or reweigh the remaining aggravating and mitigating factors itself, rather than send the case back to a jury for resentencing. When the prosecution has stressed, however, the invalid factor during the sentencing hearing, a reviewing court must justify its finding of harmless error with a "detailed explanation based on the record." *Clemons*, 494 U.S. at 753, 110 S.Ct. at 1451. As in *Clemons*, White's prosecution stressed the invalid factor during sentencing, arguing that:

the defendant was convicted of a capital felony or homicide [which] was committed in a cold, calculated and premeditated manner. Not only that it was premeditated murder, but that it was in a cold, calculated manner. I ask you to again consider the facts of the case that are before you. You have convicted the defendant of armed robbery and murder, I suggest the evidence clearly shows that it was committed in a cold and calculated manner, execution style, that both of these men were marched into the back room, and that the defendant did shoot those two men to death. You can consider the evidence also, the shooting of Mr. Alexander, as well as the gun being pointed at Pamela Tehani and her father, Henry Tehani, and the trigger being pulled on the gun twice on them. That shows how cold and calculated this crime was. I suggest to you the defendant planned it to the extent that he went in with a loaded revolver in his pants for the purpose of committing armed robbery, and he went in without a mask, and he had no intention whatsoever of having

any eyewitnesses testify against him, including James Melson, who was shot to death.

Because the prosecution stressed the invalid "cold, calculating and premeditated" factor to the jury, the reviewing court was obligated by *Clemons* to justify a holding of harmless error with a "detailed explanation based on the record." *Clemons*, 494 U.S. at 753, 110 S.Ct. at 1451.

In *Stringer v. Black,* —— U.S. ——, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), as well, the Supreme Court indicated that *Clemons* does not allow reviewing courts to give cursory attention to a defendant's sentence after an aggravating factor has been invalidated. Although *Clemons* holds that an appellate court in a weighing state need not send a case back for resentencing after an aggravating factor has been invalidated, the Supreme Court has "not suggested that the Eighth Amendment permits the state appellate court in a weighing State to affirm a death sentence without a *thorough analysis* of the role an invalid aggravating factor played in the sentencing process." *Id.* —— U.S. at ——, 112 S.Ct. at 1136 (emphasis added). To the contrary, the Court "require[s] close appellate scrutiny of the import and effect of invalid aggravating factors." *Id.* Consequently, "a reviewing court in a weighing State may not make the automatic assumption that such a factor has not infected the weighing process." *Id.* —— U.S. at ——, 112 S.Ct. at 1137.

In this case, even more than in *Clemons* and *Stringer*, "close appellate scrutiny" was required to determine whether the introduction of the invalidated factors was harmless beyond a reasonable doubt. Here, the "cold, calculated and premeditated" aggravating factor was invalidated due to insufficient evidence. In contrast, *Clemons* and *Stringer* involved death penalties based, in part, on an "especially heinous" factor found to be unconstitutionally vague under *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). The complete inapplicability of the cold, calculated and premeditated factor, rather than an invalidation based on form,

makes the prosecutor's error here worse than those in *Clemons* and *Stringer*. Whereas the reviewing courts in these cases could have justifiably upheld the sentence by finding that, "beyond a reasonable doubt the result would have been the same had the especially heinous aggravating circumstance been properly defined in the jury instructions," *Clemons*, 494 U.S. at 754, 110 S.Ct. at 1451, the Florida Supreme Court here had the more difficult task of finding that the presentation of an unsupported and consequently irrelevant factor was harmless, a finding that required not only "close appellate scrutiny" but a detailed explanation as well.

As evidenced above, *Sochor*, *Clemons* and *Stringer* indicate that in weighing states, a state supreme court's review for harmless error must contain more than a mere assertion that the introduction of that factor was harmless. The reviewing court must provide some reasoning for its holding. In White's case, the assertion of harmless error was particularly "bald" given the circumstances of the unsupported holding. The Florida Court failed the *Clemons* test by stating, in its first opinion, that death should be "presumed" to be the appropriate sentence because at least one aggravating factor remained. In its second opinion addressing this issue, the Florida Court again failed to explain its reasoning, baldly asserting that (a) the court properly applied the harmless error test in its first decision and (b) that in any case, re-analysis leads again to the conclusion that any error was harmless.

Because I believe that the state court did not make sufficient findings under *Sochor*, *Clemons*, and *Stringer*, I must dissent from that portion of the majority's opinion that affirms White's sentence.