[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11882
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-23822-JLK; 1:10-cr-20767-JLK-1

LAWRENCE S. DURAN,

Petitioner - Appellant,

versus

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 2, 2018)

Before WILSON, MARTIN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Lawrence Duran appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate his sentence. On appeal, he argues that he had ineffective assistance of counsel at various stages of the proceedings in the district court. First, at the pleading stage, Duran argues that his counsel, Lawrence Metsch, was ineffective because: (1) he failed to advise Duran to plead earlier, which would have allowed Duran to avoid the money laundering charges brought in the superseding indictment; (2) he had an unresolved conflict of interest regarding his son's prosecution for his involvement in Duran's business, and as a result, he failed to encourage Duran to cooperate fully with the government; (3) he erroneously advised Duran that he had a right to a jury trial determination of the loss amount; and (4) he failed to advise Duran that the plea colloquy before the magistrate judge was only a recommendation and that Duran retained the right to withdraw his guilty plea after the colloquy.

Next, Duran argues that Metsch was ineffective at the sentencing stage because: (1) he failed to prepare Duran to testify and failed to properly conduct re-direct examination; (2) he failed to object to Duran's Guideline adjustment under U.S.S.G. § 2S1.1, cmt. n.2(C); and (3) he failed to object to erroneous factual assertions at sentencing. Finally, Duran argues that he was entitled to an evidentiary hearing to resolve his claims.

2

I.

Duran first argues that his counsel was ineffective at the pleading stage of his proceedings below.  A claim of ineffective assistance of counsel is a mixed question of law and fact, which we review de novo.  *United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010).  In *Strickland v. Washington*, the Supreme Court established a two-part inquiry for ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984).

The petitioner bears the burden of proof in establishing both requirements of the *Strickland* test.  *See Roberts v. Wainwright*, 666 F.2d 517, 519 n.3 (11th Cir. 1982) ("The burden of proof for showing ineffective assistance of counsel is, and remains, on petitioner throughout a habeas corpus proceeding." (internal citations omitted)).  Further, "[we] need not address both [*Strickland*] prongs if the [petitioner] has made an insufficient showing on one." *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014).  Given this exacting burden, "the cases in which

3

habeas petitioners can properly prevail . . . are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc).

"To establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place." *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009).  In the context of challenging a guilty plea, the petitioner must establish that his counsel's performance was deficient and that a reasonable probability exists that he would not have pleaded guilty but for his counsel's errors.  *Strickland*, 466 U.S. at 687; *McCoy v. Wainwright*, 804 F.2d 1196, 1198 (11th Cir. 1986).

Furthermore, "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the challenged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) ("When analyzing ineffective-assistance claims, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance."); *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) (observing that courts should presume effectiveness and avoid second guessing with the benefit of hindsight).  As with the instant case, the "presumption of reasonableness is even stronger when

4

we are reviewing the performance of an experienced trial counsel." *Callahan v. Campbell*, 427 F.3d 897, 933 (11th Cir. 2006).

To satisfy the prejudice prong, the defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. *Id.* at 693.

Duran has failed to establish that Metsch was ineffective at the pleading stage. Duran has not demonstrated that Metsch's performance, even if deficient, prejudiced him in any material way. First, Duran's claim that Metsch was ineffective for failing to encourage him to plead guilty before the superseding indictment for money laundering was filed is unfounded. Although Duran wanted to plead guilty before the superseding indictment was filed, Metsch told him not to because the government planned to bring money laundering charges regardless. Metsch did not perform deficiently by discouraging Duran from pleading early where doing so would have been futile. Moreover, because the government always fully intended to bring money laundering charges against Duran, he was not prejudiced by his later pleading. Duran claims in his reply brief that the prejudice he suffered came from Metsch encouraging him to plead guilty without a plea agreement, rather than from failing to avoid money laundering charges in the

superseding indictment.  We disregard these arguments, as we generally will not consider arguments raised for the first time in a reply brief.  *See United States v. Britt*, 437 F.3d 1103, 1104 (11th Cir. 2006).

Next, Duran erroneously argues that Metsch failed to encourage him to cooperate with the government, alleging that this failure was due to a conflict of interest because Metsch's son had previously been convicted of, and fully served his sentence for, healthcare fraud.  The record reflects that Metsch attempted to convey information to the government regarding Duran's knowledge of specific criminal activity extending into other states.  The government, however, was not interested in Duran's proffered cooperation, and declined to file a motion for substantial assistance.  Accordingly, Metsch's performance was not deficient because Metsch had conveyed Duran's wish to cooperate with the government.  Moreover, Duran cannot show prejudice, as the district court had no authority to order the government to file a motion for substantial assistance.  *See Wade v. United States*, 504 U.S. 181, 185 (1992).

Duran claims he was prejudiced by Metsch's erroneous advice that he had a constitutional right to a jury trial determination on the loss amount.  During his plea colloquy, however, Duran stated that he understood that, by pleading guilty, he was giving up all rights associated with a trial.  Accordingly, Duran understood the consequences of his guilty plea, and was not prejudiced as a result. This Court

6

may end its inquiry here. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Similarly, Duran was not prejudiced by Metsch's alleged failure to advise him that the magistrate judge's adjudication of guilt was merely a recommendation where the magistrate judge clarified that point during the plea colloquy. The minute entry for the plea colloquy explicitly notes that Duran waived his right to appear before a district court judge, and that he consented to have the magistrate judge adjudicate his guilt. Duran was not prejudiced, and this Court may end its inquiry here. *See id.*

We conclude that Duran has not shown that Metsch was ineffective at the pleading stage of the proceedings below. His arguments on appeal fail to demonstrate that Metsch's performance, even if deficient, prejudiced Duran in any material way.

II.

Duran next argues that his counsel was ineffective at sentencing. With respect to Duran's first claim of ineffectiveness at sentencing—that Metsch failed to adequately prepare him to testify regarding his intended loss and failed to properly conduct re-direct examination—Duran argues that Metsch failed to

7

correct any misunderstanding that he ever intended a loss of more than $200 million. The district court may calculate intended loss using the full amount a defendant fraudulently billed to Medicare even where the defendant knew he would not receive 100% of the money from Medicare alone. *See United States v. Hoffman-Vaile*, 568 F.3d 1335, 1344 (11th Cir. 2009). When the district court determines the loss calculation under the Guidelines, "the loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, cmt. 3(A). "Actual loss" is the monetary harm that resulted from the offense and was reasonably foreseeable, *id.* at § 2B1.1, cmt. 3(A)(i), (iii), while "intended loss" is the monetary harm "that was intended to result from the offense," *id.* at § 2B1.1, cmt. 3(A)(ii), (iii). On cross-examination, Duran testified that: (1) he had fraudulently billed $205 million to Medicare for false claims; (2) he wanted to get as much money out of Medicare as possible; (3) he would not have returned any money Medicare sent him; (4) he appealed every claim Medicare denied; and (5) he also attempted to get copays from patients and other providers when he could. Duran testified that he intended to receive the full amount that he billed Medicare as part of his fraud. Considering that a district court may use the total amount billed to determine intended loss, and Duran's admission that he would not have returned any money to Medicare if it had sent him all of the $205 million he billed, Metsch had little room to argue for a lesser calculation. *See Hoffman-Vaile*, 568 F.3d at 1343–44. At that point, Metsch

8

made the strategic decision not to elicit further testimony from Duran—a decision that certainly falls within the wide range of acceptable strategic decisions.  *See Strickland*, 466 U.S. at 689.

Next, Duran claims that Metsch failed to object to Duran's Guideline adjustment.  He is correct that the court should not have applied the Chapter Three adjustments for vulnerable victims and his leadership role based on healthcare fraud underlying his money laundering crimes, and, accordingly, Metsch should have objected.  In *United States v. Salgado*, we explained that, where a defendant's convictions are grouped and the money laundering Guideline, § 2S1.1(a)(1), is used to calculate the offense level, the Guidelines commentary states that the district court can only make "Chapter Three adjustments based on the defendant's conduct in the money laundering offense itself, not based on his conduct in the offense from which the money that was laundered was obtained."  745 F.3d 1135, 1138 (11th Cir. 2014).  Specifically, the relevant Guidelines provision reads:

> Notwithstanding § 1B1.5(c), in cases in which [§ 2S1.1(a)(1)] applies, application of any Chapter Three adjustment shall be determined based on the offense covered by this guideline (i.e., the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived.

U.S.S.G. § 2S1.1, cmt. n.2(C).

Nevertheless, Duran fails to show that he was prejudiced by Metsch's failure to object because, regardless of any potential error in applying the Guidelines,

9

Duran's Guideline sentence would remain the same.  Section 3B1.1 of the Sentencing Guidelines provides that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."  U.S.S.G. § 3B1.1(a).  The presentence investigation report indicated that: (1) to launder his money, Duran obtained joint signature authority with a co-conspirator for a corporate bank account for American Therapeutic Corporation (ATC), into which Medicare deposited over $85 million; (2) Duran implemented payment schemes to have others transfer money out of that account by using many sham transactions to the shell companies Duran owned; and (3) Duran used a check-cashing store that was partially owned by his friend to launder millions of dollars by having that friend cash checks from ATC that were written to multiple shell companies.  Duran specifically noted that he had been in charge of ATC throughout the eight years he used his company to launder his money.  Moreover, the court noted that Duran's criminal conduct "spanned seven years and involved the direction of dozens of employees."

In light of these facts, the record shows that there was sufficient evidence to deem Duran a leader and organizer of the money laundering scheme, justifying his Chapter Three adjustment.  *See* U.S.S.G. § 3B1.1(a).  Accordingly, regardless of Metsch's performance, Duran's Guideline range would have remained unchanged.  Duran has, therefore, failed to demonstrate prejudice.

10

Lastly, with respect to Duran's claim that Metsch failed to object to erroneous factual assertions at sentencing, Metsch's performance was not deficient. The court explicitly provided Duran with the opportunity to correct any statements made at sentencing, and Duran indicated that he had nothing to change or correct. Moreover, as to Duran's argument that Metsch failed to prevent the government from improperly shifting blame for the criminal enterprise from Duran's accomplice to Duran himself, Duran's own testimony refutes any claim of prejudice. Duran testified that he bore primary responsibility for the healthcare fraud and money laundering schemes, as he admitted to being in charge of ATC, and that all of the $205 million he billed to Medicare over eight years was fraudulent. Accordingly, Duran has not met his heavy burden of showing that Metsch's representation was ineffective at the sentencing stage.

## III.

Lastly, Duran argues that the district court erred by failing to grant him an evidentiary hearing on his § 2255 motion despite his credible allegations. We review the denial of an evidentiary hearing on a § 2255 motion for abuse of discretion. *Aron v. United States*, 291 F.3d 708, 714 (11th Cir. 2002).

While § 2255 mandates that a court conduct an evidentiary hearing unless the motion and record conclusively show that the prisoner is entitled to no relief, a petitioner must support his allegations with at least a proffer of some credible

11

supporting evidence. *See, e.g.*, *Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006); *see also Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."). A hearing is not required on frivolous claims or contentions that are wholly unsupported by the record. *See, e.g.*, *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Aron*, 291 F.3d at 715 (explaining that no evidentiary hearing is needed when a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous"). Nor is such a hearing required "if the claims are grounded upon generalizations that are unsupported by the record." *Rosin v. United States*, 786 F.3d 873, 878 (11th Cir. 2015). Within the context of ineffective assistance allegations, "in order to be entitled to an evidentiary hearing on any such challenge, a defendant must show that: (1) his trial counsel's performance was deficient and (2) that his trial counsel's deficient performance prejudiced the defense." *Id.* at 877 (internal quotations omitted). Therefore, "[i]n order for [the petitioner] to [be] entitled to an evidentiary hearing, [the petitioner must] make a credible allegation that he was prejudiced by his counsel['s] deficient performance." *Id.* at 878.

We conclude that Duran was not entitled to an evidentiary hearing on his ineffective assistance claims because, as discussed above, the record affirmatively

12

refutes his arguments.  Accordingly, the district court did not abuse its discretion, and we affirm its denial of Duran's § 2255 motion to vacate.

    **AFFIRMED.**