LYNCH, Circuit Judge.
Jose Serrano-Beauvaix and Mahmud Juma-Pineda were participants in a large conspiracy which transported drugs under the protection of corrupt police officers in the Puerto Rico Police Department. The conspiracy is described in United States v. Flecha-Maldonado, 373 F.3d 170, 172-74 (1st Cir.2004), upholding the conviction of one of Serrano’s and Juma’s co-conspirators.
In brief,. Serrano, a former police officer who had been expelled from the force, helped to recruit Juma, a police officer at the time, to provide armed escort for a shipment of ten kilograms of cocaine in October, 2000. Juma rode with the drugs and carried a pistol. Serrano rode in another car and conducted counter-surveillance and advised his - codefendants through cell phones. They each received a $5000 payment for their services in -the crime. ■
Each defendant pled guilty to charges of conspiracy to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a) and 846 (Count One), and of carrying firearms (and aiding and abetting of same) in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 (Count Three). Each defendant stipulated to being personally responsible for one kilogram of cocaine. In the plea agreements, each also agreed to certain sentencing enhancements and acknowledged that each did not qualify for- safety-valve treatment under the Sentencing Guidelines.
Serrano was sentenced to 63 months’ imprisonment for Count One and a consecutive term of 60 months for Count Three. Juma was sentenced to 60 months’ imprisonment for Count One and a consecutive term of 60 months for Count Three.
Serrano appeals from his conviction for the firearms count, contending that his guilty plea was procedurally flawed under Fed.R.Crim.P. 11(b)(3).[1] We reject this argument because there was no error during the Rule 11 colloquy. Serrano and Juma both appeal their sentences, raising a variety of arguments, most of which were waived by their plea agreements. Serrano also raises a claim of plain error as to his sentence under United States v. Booker, 543 U.S. -, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). We reject this argument as well because Serrano has failed to carry his burden that there is a “reasonable probability” that he would be sentenced more leniently under an advisory Guidelines system. See United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir.2005).
I.
A. Serrano’s Appeal
1. The Guilty Plea To Count Three
Serrano argues for the first time on appeal that the district court erred procedurally in accepting his guilty plea to Count Three. His argument is that the district court failed to “explore the factual basis of the guilty plea” as required by *53 Fed.R.Crim.P. 11(b)(3), which states: “Before entering judgment, on a guilty .plea, the court must determine that there is a factual basis for the plea.” Serrano argues that had the district court done so, it would have found that there was no factual basis for Serrano’s guilty plea because Serrano only admitted to providing “armed transport” for the drug shipment, but not to having possessed a firearm. The admission that he was “armed” was insufficient, he now argues, because it might have meant that he was “armed with a big stick.”
We review a Rule 11 challenge raised for the first time on appeal only for plain error. United States v. Vonn, 535 U.S. 55, 74-76, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002); United States v. Cheal, 389 F.3d 35, 40 (1st Cir.2004); [1] see also United States v. Mills, 329 F.3d 24, 27 (1st Cir.2003) (“An error not objected to at the plea hearing is reversible only where the error is plain, affects the defendant’s substantial rights, and seriously affects 'the fairness of the proceeding.”). As to the underlying issue of compliance with the Rule, “[o]n a plea, the question under Rule 11(f) [now Rule 11(b)(3) ] is not whether, a jury would, or even would be likely, to convict: it is whether there is enough evidence so that the plea has a rational basis in facts that the defendant concedes or that the government proffers as supported by credible evidence.” United States v. Gandia-Maysonet, 227 F.3d 1, 6 (1st Cir.2000). In this case, there was no error.
Serrano’s argument mischaracterizes his plea colloquy by ignoring the aiding and abetting and in furtherance of the conspiracy aspects of the charge against him in Count Three. The district, court’s Rule .11 colloquy focused on those aspects of the charge. It is irrelevant whether there were facts to show that. Serrano was personally armed with a gun or a big stick; During the Rule 11 colloquy, Serrano specifically agreed that in “aiding and abetting each other a gun was possessed in furtherance of the conspiracy” (emphasis added). Furthermore, Serrano’s counsel explained that Serrano understood that although he. “did not carry the firearm” (emphasis added), he was responsible for the firearm(s) carried by his codefendant(s) under Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Rule 11(b)(3) is meant to “protect a defendant who is-in the position of pleading voluntarily with an understanding of the nature of the charge but without -realizing that his conduct does not actually fall within the charge.” McCarthy v. United States, 394 U.S. 459, 467, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (footnote and internal quotation marks omitted). The district judge ascertained that Serrano understood that he could be held liable for the firearms charge without having carried the gun himself and that Serrano was aware of the gun Juma possessed as part of the “armed escort” they provided for the drug shipment.
2. The Sentence for Count One
Serrano brings a trio of challenges to his sentence as to Count One,[2] and argues that *54 we should remand to the district court for resentencing in light of United States v. Booker, 543 U.S. —, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). First, he challenges the evidentiary support for his criminal record and his organizer role sentencing enhancement; second, he argues that the district court was constrained by the mandatory Sentencing Guidelines and so sentenced him to above the statutory minimum; third, he argues that he should have been given the benefit of the safety valve. We take up each challenge in ton.
i. We begin with Serrano’s argument that there was no factual support for either the finding 1) that Serrano’s role during the offense was that of an “organizer, leader, manager, or supervisor,” justifying an increase in his offense level by two levels, see U.S.S.G. § 3B1.1(c), or 2) that Serrano’s criminal history placed him in criminal history category II.[3] If the district court erred in making these findings and, as a result, misapplied sentencing enhancements under the Guidelines so as to cause prejudice to Serrano’s sentence, the errors would ■ justify remand for resentencing even under pre-Booker circuit precedent. See, e.g., United States v. Thiongo, 344 F.3d 55, 63 (1st Cir.2003); United States v. McMinn, 103 F.3d 216, 219 (1st Cir.1997).
Serrano has waived his challenge to his organizer role enhancement. ' The plea agreement stipulated that Serrano “helped [another codefendant] contact and recruit a police officer to assist in the escort of the cocaine shipment.” The plea agreement also included the stipulation that Serrano’s offense level would be adjusted upwards by two levels under § 3B1.1 because he “recruited one of his co-defendants.” The district judge ascertained that Serrano understood and agreed to -this adjustment. At sentencing, Serrano made no objection to the finding that he recruited a codefen-dant.
As for Serrano’s criminal history, “[o]rice the government establishes the existence of .a prior conviction, the burden shifts to the defendant to show that the earlier conviction was constitutionally infirm or otherwise inappropriate for consideration.” United States v. Barbour, 393 F.3d 82, 93 (1st Cir.2004). At Serrano’s detention hearing, his counsel stipulated to a criminal conviction in Humacao for violating Puerto Rico weapons laws. Serrano’s pre-sentencing report (PSR), “which can be used to satisfy the government’s ‘modest’ burden,” id. (quoting United States v. Gray, 177 F.3d 86, 89 (1st Cir.1999)), detailed Serrano’s prior conviction in commonwealth court in Humacao for violating Puerto Rico weapons laws and calculated his criminal history score to be 3. Serrano made no objection to his criminal history score in the PSR at his sentencing hearing. Serrano conceded that “the probation officer has to follow what convictions [Serrano] has in the police of Puerto Rico records.” In fact, the only “correction” that Serrano’s counsel wished to make to the PSR .was to “reference ... the actual number of the criminal case in Humacao,” and the court agreed. Serrano admitted to this conviction at the sentencing hearing, but suggested as a “mitigating argument” that he had a “solid alibi de *55 fense.” The district court properly rejected this argument.
ii. Serrano next argues that his sentence on Count One should be vacated and the case remanded for resentencing because the district court was clearly constrained by the Guidelines during sentencing and imposed the 63-month term, which was above the statutory minimum of 60 months, and was at the bottom of the applicable Guidelines range. Post Booker, Serrano argues, the district court could have (and would have) sentenced him to the statutory minimum of 60 months. Serrano made no arguments in the district court questioning the constitutionality of the Guidelines or the application of the Guidelines to his sentence under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), or Blakely v. Washington, 542 U.S. -, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), so the Booker issue was not preserved. See Antonakopoulos, 399 F.3d at 76.
 We have recently set forth the applicable framework for review of unpreserved Booker claims in Antonakopoulos. Utilizing the four-prong test in United States v. Olano, 507 U.S. 725, 113, S.Ct. 1770, 123 L.Ed.2d 508 (1993), there must be (1) an error (2) that is plain, and it (3) affects substantial rights and (4) seriously impairs the fairness, integrity, or public reputation of judicial proceedings. Antonakopoulos, 399 F.3d at 74. The first two prongs of the plain error test are met whenever the district court treated the Guidelines as mandatory at the time of sentencing. Id. But to meet the third prong of the test, the defendant must persuade us that there is a “reasonable probability that the district "court would impose a different sentence more favorable to the defendant under the new ‘advisory Guidelines’ Booker regime.” Id. '“[I]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice under plain-error analysis.” Id. at 77 (citations and internal quotation marks omitted).
Serrano relies upon the district judge’s statement at the sentencing hearing: “I have to consider the fact that I cannot sentence him to 60 months. The lowest I can sentence him on that particular, situation is 63.” This statement, he argues, makes it “clear that the district court would have sentenced [Serrano] to 60 months in prison instead of 63 on count one.” Not so. Given Serrano’s criminal history category and his role as recruiter, and the amount of drugs involved, the court’s statement was a simple statement of fact. The statutory minimum, without the enhancements, was 60 months. He was sentenced to 63 months, out of a possible range of 63 to 78 months. Serrano’s argument amounts to an assertion that there was such á reasonable probability that the judge would have totally ignored Serrano’s role’ in the offense and prior conviction and that our confidence in the outcome is undermined by the fact that the judge actually considered these two enhancements. Even post-Booker, the district court “must consult those Guidelines and take them into account when sentencing.” Booker, 543 U.S. at -, 125 S.Ct. at 767. And so the court had to consider both role in the offense and his criminal history. Serrano has failed to meet his burden.
iii. Serrano’s final argument in his sentencing appeal is that the district court committed error in denying him the benefit of the provisions of the safety valve under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. The argument, raised for the first "time on appeal, is that but for the court’s findings that Serrano had more than one criminal history point and that Serrano was an organizer of the criminal activity, *56 he would have qualified for safety-valve treatment and thus be entitled to sentencing without regard to any statutory minimum.
The effect of Booker, if any, on the safety valve has not been determined. See Antonakopoulos, 399 F.3d at 76 n. 6. But Serrano’s argument is waived because Serrano explicitly agreed in his plea agreement that he did not qualify for safety-valve treatment, and confirmed that he understood that he did not qualify for the safety valve during his change of plea hearing.
B. Juma’s Appeal of His Sentence
Juma first argues that the district court erred by equating his carrying of his official police pistol during the crime with disqualification from his entitlement to a downward departure under the safety valve. See 18 U.S.C. § 3553(f) and U.S.S.G. §§ 2D1.1(b)(7), 5C1.2. He argues that but for the finding that he carried his pistol during and in connection with the crime, he would have qualified for safety-valve treatment and be sentenced below the statutory minimum. Although he stipulated to having “carried a pistol” during the escort in his plea agreement, Juma contends that the district court erred by not considering that he may nonetheless qualify for the safety valve because the firearm was not clearly connected to the offense.[4] See United States v. Bolka, 355 F.3d 909, 914 (6th Cir.2004).
This argument is waived because Juma explicitly agreed in his plea agreement that he did not qualify for safety-valve treatment, and confirmed that he understood that he did not qualify for the safety valve during his change of plea hearing.
Juma’s second argument is that a jury, not a judge, should have made the factual determinations underlying his disqualification for the safety valve and the abuse of public trust enhancement. By pleading guilty he waived consideration of the issues by a jury.
III.
Serrano’s conviction and both defendants’ sentences are affirmed.

. Rule 11(b)(3) resulted from the recodification of its predecessor, Rule 11(f), in December of 2002. See United States v. Ventura-Cruel, 356 F.3d 55, 60 n. 5 (1st Cir.2003). However, the change in language between Rule 11(b)(3) and. Rule 11(f) is only stylistic. Id.

. Serrano's sentence was computed as follows: The stipulated drug amount established a base offense level of 26. U.S.S.G. § 2D 1.1 (c)(7). This base offense level was enhanced by two levels because of his role as an "organizer, leader, manager, or supervisor" and reduced by three levels because of his acceptance of responsibility, yielding a final offense level of 25. See U.S.S.G. §§ 3B1.1(c), 3E1.1(a)-(b). The base offense level and the enhancement calculations were all made a part of the plea agreement signed by the defendant. His criminal history score was 3, which placed.-him in criminal history category II. The Guidelines range was therefore 63-78 months. U.S.S.G. Ch. 5 Pt. A. The *54 statutory minimum under 21 U.S.C. § 841(b)(1)(B) for the offense Serrano pled guilty to is 60 months.

. Without the role-enhancement, Serrano's final offense level would have been 23, and combined with a criminal history category of ll, would have produced a Guidelines sentencing range of 51-63 months. U.S.S.G. Ch. 5 Pt. A. Similarly, if Serrano’s criminal history category had been I, that, combined with a final offense level of 25, would have produced a Guidelines range of 57-71 months. Id.

. During the drive to transport the drugs, Juma pulled out the gun to clean it in plain view. Flecha-Maldonado, 373 F.3d at 173.