# United States Court of Appeals
## For the First Circuit

No. 20-1093

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN H. NARDOZZI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Lipez, and Kayatta,
Circuit Judges.

Seth Kretzer for appellant.
Mark S. Determan, Attorney, Tax Division, with whom Richard
E. Zuckerman, Principal Deputy Assistant Attorney General, S.
Robert Lyons, Chief, Criminal Appeals and Tax Enforcement Policy
Section, Katie Bagley, Attorney, Tax Division, Joseph B. Syverson,
Attorney, Tax Division, and Andrew Lelling, United States
Attorney, were on brief, for appellee.

June 24, 2021

**LYNCH**, **Circuit Judge**.  Defendant John Nardozzi appeals from his convictions for one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and eight counts of aiding or assisting in the filing of a false tax return, in violation of 26 U.S.C. § 7206(2).  He further challenges the district court's imposition by reference of the conditions of supervised release stated in the United States Probation Office's ("Probation's") Presentence Report ("PSR"), and the district court's imposition of restitution without setting a specific payment schedule at the time of sentencing.  We find that his challenges are meritless and affirm.

I.

Before his indictment in 2018, Nardozzi was a Certified Public Accountant ("CPA") with over forty years' experience. Beginning in 2008, he operated his own accounting firm.  Nardozzi provided tax preparation and tax return filing services to Brian Joyce ("Joyce"), his wife Mary Joyce, and Joyce's law firm, Brian A. Joyce, Attorney-at-Law, P.C. ("the Joyce law firm").  At the time, Brian Joyce was a Massachusetts state senator.

In December 2017, a federal grand jury indicted Joyce on 113 felony counts, including racketeering, extortion, fraud, money laundering, and conspiracy to defraud the IRS.  The indictment alleged that Joyce solicited payments from businesses in exchange for political favors, and then falsely characterized those

- 2 -

payments as legitimate legal fees paid to the Joyce law firm. Joyce died in September 2018, before his case went to trial.

One month after Joyce was indicted, on January 18, 2018, a grand jury indicted Nardozzi for his role in preparing and filing tax returns on behalf of Brian and Mary Joyce, and the Joyce law firm. As described, the indictment charged him with conspiracy to defraud the United States and eight counts of aiding or assisting in filing false tax returns.

Conspiracy to defraud the United States by impeding the IRS's assessment and collection of taxes is commonly known as a Klein conspiracy. United States v. Mubayyid, 658 F.3d 35, 57 (1st Cir. 2011); see also United States v. Klein, 247 F.2d 908 (2d Cir. 1957). "To prove a Klein conspiracy, the government is required to establish both 'an agreement whose purpose was to impede the IRS . . . ,' and the knowing participation of each defendant in that conspiracy." Mubayyid, 658 F.3d at 37 (emphases omitted) (quoting United States v. Adkinson, 158 F.3d 1147, 1154 (11th Cir. 1998)).

Aiding or assisting in the filing of a false tax return requires proof that the defendant "[w]illfully aid[ed] or assist[ed] in, or procure[d], counsel[ed], or advise[d] the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit,

claim, or other document, which is fraudulent or is false as to any material matter." 26 U.S.C. § 7206(2).

At trial, the evidence against Nardozzi was overwhelming. The government presented evidence that Nardozzi had prepared and filed tax returns on behalf of Joyce, Mary Joyce, and the Joyce law firm which defrauded the United States by misreporting income and mischaracterizing transactions, costing the government $598,362.80 in tax revenue.

The government presented evidence that Joyce used his law firm to pay personal expenses, such as tuition, credit card bills, vacations, car purchases, and shopping expenses, and Nardozzi then classified those payments as tax-deductible business expenses, reducing the Joyce law firm's taxable income by approximately $2.2 million over a four-year period. IRS revenue agent James McCurdy testified that this defrauded the government out of $793,982 in corporate taxes.[1]

---

[1]    IRS revenue agent McCurdy testified that this amount was offset by an overpayment of $195,619.20 on Joyce's personal tax returns between 2011 and 2014, resulting in the total net loss to the government of $598,362.80 during that period. At trial, the government's theory was that Nardozzi prepared and filed returns for Joyce that characterized business income as personal income in order to benefit from the lower effective individual tax rate. Nardozzi then misused tax devices to minimize Joyce's and his wife's individual tax obligations. Consequently, when IRS revenue agent McCurdy calculated the Joyces' actual tax obligation between 2011 and 2014, he found that the Joyces had overpaid taxes on their individual incomes but had avoided a much larger amount in corporate taxes owed by the Joyce law firm.

The government presented evidence Nardozzi prepared and filed tax documents that assigned $390,000 of the Joyce law firm's revenue to Mary Joyce -- even though she performed no work for the firm -- to inflate her allowable tax-deductible SEP-IRA[2] contributions. By increasing the maximum tax-deductible contribution, the returns prepared and filed by Nardozzi allowed the Joyces to claim an additional $267,807 in deductions on their personal returns, impeding the IRS's accurate assessment of taxes against them.

Nardozzi also prepared and filed a return on behalf of Joyce which improperly classified a $427,000 stock purchase as an IRA rollover. This fraudulently allowed Joyce to avoid paying any taxes or early withdrawal penalties on $217,500 withdrawn from Joyce's SEP-IRA and $105,125 withdrawn from Mary Joyce's SEP-IRA (with the remaining funds for the stock purchase coming from other sources).

Nardozzi failed to properly report on Joyce's 2014 return -- which he prepared and filed -- Joyce's use of approximately $150,000 of business funds to pay off a personal loan as taxable income. Nardozzi does not dispute on appeal that

---

[2] SEP-IRA stands for "Simplified Employee Pension Individual Retirement Arrangement." West's Tax Law Dictionary § S1175 (2021). A SEP-IRA allows a self-employed business owner to provide retirement benefits to both the business owner and his or her employees. Id. Individuals may make pre-tax contributions to the SEP-IRA out of the income they earn from the business.

each of these instances "impede[d] the IRS." Mubayyid, 658 F.3d at 57 (emphasis omitted) (quoting Adkinson, 158 F.3d at 1154).

On counts two through eight, the government also introduced evidence of at least eight separate incidents where Nardozzi prepared and filed tax returns that omitted or mischaracterized income for Joyce, his wife, or his law firm. Nardozzi does not contest on appeal that the returns prepared and filed by Nardozzi were false.

The government further introduced at trial evidence of Nardozzi's awareness of the particular tax considerations for a C-corporation, such as the Joyce law firm. Nardozzi had, for example, discussed the problem of "double-taxation" between personal and corporate taxes for a C-corporation in a journal article and at seminars.

Nardozzi's trial counsel argued in defense that Nardozzi relied on the information provided to him by Joyce's bookkeepers, or by Joyce directly, and that Nardozzi was "out of the loop." Nardozzi's counsel argued to the jury in closing that Nardozzi "relied on what the bookkeepers told him" and he did not act with "criminal intent."

On October 16, 2019, the jury returned a verdict of guilty on all counts. On January 9, 2020, the district court held a sentencing hearing. At his sentencing Nardozzi stated he had read and understood the PSR prepared by Probation. The district

court imposed a sentence of 18 months' imprisonment, and stated, "[y]ou're subject, during the 3 years of supervised release, to all of the mandatory conditions of supervision and the special conditions set forth in Paragraphs 1 through 8 on Page 23 of the [PSR]."[3] Nardozzi did not object. The district court also ordered Nardozzi to pay restitution in the amount of $598,362.80. It then issued a written judgment which stated, among other things, that Nardozzi would pay restitution according to a "court-ordered" schedule. Nardozzi again did not object, either at sentencing or in response to the written judgment. On January 15, 2020, Nardozzi filed this timely appeal.

---

[3] These are: "1. You are prohibited from engaging in an occupation, business, or profession that would require or enable you to prepare taxes or provide consultation on tax issues. 2. You are prohibited from consuming any alcoholic beverages. 3. You must participate in a mental health treatment program as directed by the Probation Office. 4. You must participate in a program for substance abuse counseling as directed by the Probation Office, which program may include testing, not to exceed 104 drug tests per year to determine whether you have reverted to the use of alcohol or drugs. 5. You must pay the balance of any fine or restitution imposed according to a court-ordered repayment schedule. 6. You are prohibited from incurring new credit charges or opening additional lines of credit without the approval of the Probation Office while any financial obligations remain outstanding. 7. You must provide the Probation Office access to any requested financial information, which may be shared with the Financial Litigation Unit of the U.S. Attorney's Office. 8. You shall be required to contribute to the costs of evaluation, treatment, programming, and/or monitoring (see Special Condition # 3 & 4), based on the ability to pay or availability of third-party payment."

This court reviews the sufficiency of the evidence de novo, construing the evidence in the light most favorable to the verdict. United States v. Stepanets, 989 F.3d 88, 95 (1st Cir. 2021). Reversal is appropriate only if "no rational jury could have found that the government proved the [offense] element[s] beyond a reasonable doubt." Id.

This court "review[s] conditions of supervised release for abuse of discretion." United States v. DaSilva, 844 F.3d 8, 11 (1st Cir. 2016) (quoting United States v. Del Valle-Cruz, 785 F.3d 48, 58 (1st Cir. 2015)). We ordinarily review the district court's restitution order under the same standard. See United States v. Montalvo-Cruz, 745 F.3d 583, 585 (1st Cir. 2014).

Where a defendant fails to raise an issue to the district court, this court reviews only for plain error. See United States v. Serrano-Beauvaix, 400 F.3d 50, 53 (1st Cir. 2005). To establish plain error, a defendant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001) (citing Johnson v. United States, 520 U.S. 461, 466-67 (1997) (additional citations omitted)).

III.

Nardozzi first argues that the government failed to introduce sufficient evidence that he knowingly conspired to defraud the United States or that he willfully aided or assisted Joyce in filing false tax returns. He next argues that the district court erred by incorporating the conditions of supervised release recommended by Probation in the PSR by reference, rather than describing each of those conditions orally at sentencing. Nardozzi also says the district court erred by failing to impose at the time of sentencing a specific schedule for the payment of restitution. None of these arguments has merit.

Nardozzi argues that "there was no evidence of [a] conspiratorial agreement between Joyce and Nardozzi" and that as to all counts there is insufficient evidence that Nardozzi acted either knowingly or willfully.[4] We disagree. There is ample evidence in the record from which the jury could have concluded there was a conspiratorial agreement between Joyce and Nardozzi.

_____

[4] Nardozzi also argues that Joyce and Nardozzi lacked any financial motive for the misstatements on Joyce's returns. He states "Nardozzi was convicted for what had to be one of the least efficacious tax-fraud conspiracies in history" because Joyce made overpayments on his personal taxes for three of the four years of returns covered by Nardozzi's indictment. As we have described, this ignores the fact that the Joyce law firm reduced its taxable income by approximately $2.2 million over the same period, dwarfing any overpayment on Joyce's personal returns. Nardozzi does not challenge on appeal the district court's conclusion that the tax returns which he prepared and filed on behalf of Joyce underpaid the IRS by a net total of $598,362.80.

- 9 -

"[I]t is a 'well-established legal principle that a conspiracy may be based on a tacit agreement shown from an implicit working relationship.'"  Mubayyid, 658 F.3d at 57 (quoting United States v. Patrick, 248 F.3d 11, 20 (1st Cir. 2001)).  Nardozzi was an experienced CPA, with particular knowledge of the tax consequences of a C-corporation such as the Joyce law firm.  Nardozzi repeatedly mischaracterized personal expenses on Joyce's returns as business expenses, allowing Joyce to claim millions of dollars in business tax deductions.  In at least two instances -- the early withdrawal of SEP-IRA funds for Joyce's one-time $427,000 stock purchase and the use of business funds to pay off a personal loan -- Nardozzi expressly informed Joyce that the transaction would have negative tax consequences.  When Joyce objected to paying additional taxes, Nardozzi, knowing it was illegal to do so, followed Joyce's wishes and reported these transactions in a way that avoided any increased taxes.

These facts also support the jury's conclusion that Nardozzi's conduct was knowing and willful.  See United States v. Marek, 548 F.3d 147, 152 (1st Cir. 2008) ("[P]urely circumstantial evidence can support an inference of knowledge." (quoting United States v. Lachman, 521 F.3d 12, 17 (1st Cir. 2008))).  A jury could easily conclude that Nardozzi knew that personal expenses could not be claimed as business deductions and knew the tax implications of Joyce's financial dealings.  A jury could also conclude that

- 10 -

Nardozzi understood the consequences of Joyce's dealings based on Nardozzi's proposal to create backdated corporate minutes declaring a dividend that could be used to reduce or eliminate Joyce's personal loan. The government's case is made even stronger by the fact that Nardozzi expressly advised Joyce that certain transactions would have adverse tax consequences, but the return misrepresented those transactions to avoid increased tax liabilities. In these circumstances, the jury verdict is well supported by the record at trial.

Nardozzi next argues that the district court erred by stating that Nardozzi was "subject, during the [three] years of supervised release, to all of the mandatory conditions of supervision and the special conditions set forth in Paragraphs 1 through 8 on Page 23 of the [PSR]" without repeating each of those conditions orally at sentencing.

Under any standard of review, this argument fails. Mandatory or recommended conditions of release may be incorporated by reference in the district court's written judgment after sentencing. See United States v. Tulloch, 380 F.3d 8, 10 (1st Cir. 2004) (per curiam), as amended (Sept. 17, 2004). In Tulloch this court stated, "a mandatory . . . condition [of supervised release] may be included in the written sentencing judgment without having been mentioned at sentencing" and "the standard supervised release conditions set out in the United States Sentencing

- 11 -

Guidelines may be adopted by reference at the sentencing hearing." Id. The district court must raise non-standard conditions of supervised release at sentencing. United States v. Sepúlveda-Contreras, 466 F.3d 166, 169-70 (1st Cir. 2006). The district court need not orally describe each of the non-standard conditions at the sentencing hearing, however. As the Fifth Circuit stated in United States v. Diggles, 957 F.3d 551, 560 (5th Cir.), cert. denied, 141 S. Ct. 825 (2020), on which Nardozzi relies, "adoption of a written list of proposed conditions provides the necessary notice." Id. "A sentencing court pronounces supervision conditions when it orally adopts a document recommending those conditions." Id. at 563. The district court's express oral adoption of the conditions of supervised release set out in the PSR satisfies the standards in Tulloch, Sepúlveda-Contreras, and Diggles. There was no error in the district court's adoption of the terms of supervised release in the PSR by reference.

Finally, Nardozzi argues that the district court erred by failing to impose a specific schedule for payment of restitution at the time of sentencing. This was not error.[5] In United States

---

[5] In any event, because Nardozzi failed to object to the imposition of restitution, our review is only for plain error. Serrano-Beauvaix, 400 F.3d at 53. Nardozzi has not even attempted to show how the district court's failure to set out a specific restitution payment schedule at sentencing affected his substantial rights, so he has failed to demonstrate plain error. Cf. United States v. Sawyer, 521 F.3d 792, 796-97 (7th Cir. 2008).

v. Morán-Calderón, 780 F.3d 50 (1st Cir. 2015), this court held that if the district court does not set a schedule for restitution at sentencing it must make its "reservation of authority explicit." Id. at 52 (quoting United States v. Merric, 166 F.3d 406, 409 (1st Cir. 1999)).  Here, the district court did so.  It stated that any future payment schedule would be "court-ordered."  Nardozzi points to no authority stating that such a reservation of authority is inadequate.

IV.

The judgment of the district court is affirmed.